# Brown *et al. versus* Commonwealth Mutual Insurance Company.

*Insurance Policy, Conditions in construed.— Condition not to encumber insured Property with Liens when broken.*

1. In a policy of insurance, used for insuring both real and personal property, a condition that if, during the life of the policy, an encumbrance fall or be executed upon the property insured, sufficient to reduce the real interest of the insurer to or below the value of the property, without the consent of the insurance company, the policy shall be void, applies to both kinds of property, and means that the owner's interest shall not be reduced by encumbrances below the amount insured without notice to the company.

2. Upon such notice of liens upon the property insured, the company would have the right to rescind the policy on repayment of a proportionate part of the premium.

3. Where the insured had liens upon their property to a large amount before purchasing the policy, and during its life heavy judgments were entered against one or the other of them, to an amount beyond the value of the property, without notice to or consent by the company, a material covenant of the policy was thereby violated by the insured, and they were not allowed to recover.

4. After notice of liens against his property has been given by the insured to the insurance company, their consent to stand as insurers would be implied if there was no dissent.

5. Where the court referred the questions of fact to the jury, instructing

[Brown *et al. v.* Commonwealth Mutual Insurance Co.]

them that if they believed the evidence of encumbrances upon the property insured both before and after the date of the policy, their verdict should be for the defendant, it was held not to be error.

ERROR to the Common Pleas of *Erie county.*

This was an action of debt, brought June 10th 1857, by Conrad Brown, Jr., and George W. Barr, against The Commonwealth Mutual Insurance Company of Harrisburg, on a policy of insurance dated April 11th 1857, covering a "frame building belonging to the plaintiffs' estate on the south side of Eighth street, in the city of Erie, occupied as a warehouse, and for putting together reaping machines," by which it was insured for $2000 for one year against "loss or damage by fire, agreeably to the tenor of their printed proposals and the conditions thereto attached." The building was totally destroyed by fire on the night of the 10th of February 1858; and payment of the insurance-money having been refused, this action was brought.

On the trial the plaintiffs gave in evidence their application for the insurance, the policy, the usual notices, the destruction of the insured property by fire, and its cash value at the time.

The defence was :—1. That the property insured was largely encumbered at the time of the application, which fact was not disclosed to the insurers.

2. That the building was used for other purposes than that specified in the application, and during the life of the policy was made the depository of more hazardous articles than those named in the application as intended to be stored there.

3. That subsequently to the date of the policy, and before the fire, large encumbrances were created by judgment against the interest of one of the insured, of which no notice was given to the defendants; all which facts, it was alleged, were violations of conditions and breaches of warranties contained in the policy or contract between the parties.

The plaintiffs in reply proved that the assets of Sennett, Barr & Co., and of Barr & Brother, were sufficient to pay all the debts of those firms—that the firms were solvent. And further proved that the real estate of Conrad Brown and the real estate of George W. Barr were worth a sum beyond all the liens against them.

The defendants requested the court to charge the jury :—

1. That if the building insured was at the date of the application encumbered with judgment liens to an amount considerably beyond its whole value, and the plaintiffs in answer to the interrogatory of the company's agent stated that it was encumbered "probably a little," such misstatement will defeat a recovery in this case.

2. If the building was, during the life of the policy, occupied by painters with their stock and materials, paints, varnish, &c.,

[Brown *et al. v.* Commonwealth Mutual Insurance Co.]

and the plaintiffs paid no extra premium, nor informed the company of such hazardous articles being kept there, they cannot recover.

3. If, during the life of the policy, the property became encumbered by the lien of the judgments confessed by the plaintiffs, or either of them, to an amount largely beyond its whole value, and they failed to notify the company and obtain their consent to the continuation of the policy, then the plaintiffs cannot recover.

The court below, after stating the case, charged thus:—" The conditions in the application, or attached to a policy of insurance, are as much a part of it as if incorporated into the instrument itself. The application, in this case, contains a covenant on the part of the assured that the statement and answers to certain questions therein put should be considered as warranted facts.

"Among other things, the question is asked, to be answered by the applicant, ' Is there any encumbrance upon the property to be insured ?' The answer given is, ' Probably a little.' The agreement that the answer should be considered a warranty, bound the assured to make that answer exactly according to the fact. Ignorance is no excuse for a failure to do so ; nor would a knowledge of its untruth by the other party excuse it. An exhibition of the records in this county, shows a large number of encumbrances by judgments at the date of the policy and application.

" We think the answer not such as the facts required under their obligation to tell the truth. That answer leaves the fact of any encumbrance doubtful, and affirms that, if any, it was but small ; whereas, the actual liens appear to be about equal to the entire estimated value of the property. If so, it would avoid the policy.

" There is also a condition attached to the policy of this kind : ' Should there, during the life of the policy, an encumbrance fall or be exhibited upon the property insured, sufficient to reduce the real interest of the insured in the same to a sum only equal to or below the amount insured, and the assured shall neglect or fail to obtain consent of the company thereto, then and in that case the policy shall be void.'

" The records of the court show that after its date, and before the fire, judgments to a considerable amount were recovered against both the plaintiffs, and to a very large amount additional against one of them. It is not pretended that any notice of either was given to the company.

" In this, also, we think the assured have failed to comply with that condition on which the validity of the policy is made to depend.

" As judgments are the usual mode by which encumbrances are

[Brown *et al.* v. Commonwealth Mutual Insurance Co.]

created in this state, liens thus created were no doubt in contemplation of the parties, and are within the meaning of the terms used by them in this contract.

"We therefore answer the first and third points put by the defendants' counsel in the affirmative. The second we answer in the negative. There is no evidence that the answer made, as to the occupation of the building, was incorrect when made, nor that at the time of the fire there was any considerable amount of painters' stock or extra hazardous goods in the building. The evidence does not show that any painting had been done there after the middle of July 1857, about seven months before the burning, nor that the fire was occasioned by the presence of any such materials or was aggravated by them.

"As the plaintiffs' right of recovery depends on the construction the court has given to the contract between the parties, as evidenced by the terms of the application and the conditions of the policy, if you believe the undisputed evidence of the encumbrances upon the property insured, both before and after the date of the policy, your verdict ought to be for the defendant."

There was a verdict and judgment accordingly; whereupon the plaintiffs sued out this writ, and assigned for error in the court below the affirmative answers given to the first and third points of defendants.

*John H. Walker* and *B. Grant*, for plaintiffs, argued that the court below were wrong in the construction given to the plaintiffs' application; that the answer of the insured to the question about the encumbrances was not a warranty, nor the application, properly any part of the policy. That only the answers which are *relative to the risk* are, properly speaking, a warranty, of which this is none, having no connection whatever with the risk.

The policy does not refer to the application so as to make it a part of it, but only to the "provisions, class of hazards, and conditions," in reference to which it is "made and accepted." The answer to the question about encumbrances is to be viewed simply as a representation, and not as a warranty or part of the contract. A warranty does not arise from mere description: 5 Hill 188; 2 Hall 589.

2. The interrogatory was not as to the amount of the encumbrance on the property, but, "are there any?" The answer was that there was "probably a little." This answer was as full as was desired, or the application would have been "rejected." This point is settled in Nichols *v.* The Fayette Insurance Company, 1 Allen 63; Bell *v.* The Insurance Company, 6 Grey 191; Liberty-Hall Association *v.* Housatonic Mutual Fire Insurance Company, 7 Grey 365.

The third point was erroneously answered. There is nothing

in the conditions of insurance appended to the policy which renders it void, if the assured should fail to notify the company of liens that might thereafter be obtained against them. The entire paragraph on which this point is based refers exclusively to personal property, but whether they refer to real or personal property they do not affect this case, because there was no "execution or other proceeding in law or equity" issued, as stipulated against in the 14th condition.

Nor do the other words refer to real property :—1. Because the lien of judgments upon real estate do not reduce the "*real interest* of the insured" in the property. His title to or interest in the realty is unaffected by judgments against it. They do not *reduce* the interest of the assured in the property; they only give to the judgment-creditors a lien upon it.

2. Because the words alluded to, which can only refer to personal property, use the word "*it*" as designating the property referred to in the entire paragraph.

3. Because the words " and the assured shall neglect or fail to obtain the consent of the company thereto," indicate that the act to be done is something voluntary on the part of the assured.

But suppose that part of the 14th condition has reference to both real and personal property, does it refer to judgments obtained against the assured after the granting and during the life of the policy ? We say it does not,

1. Because when the language used in the application, class of hazards, conditions, and policy is susceptible of two interpretations or expositions, that one is to be used or adopted most favourable to the assured, the language used being that of the underwriters.

2. Because the words " should there, during the life of the policy, an *encumbrance fall or be executed upon the property insured*, sufficient to reduce the *real interest* of the insured in the same to a sum only equal to or below the amount insured," do not, in their ordinary signification, refer to judgments.

3. Because the words " *an encumbrance fall or be executed upon the property*," are technical words, and are to be so understood in this policy. That technical sense is, that during the life of the policy another has obtained an interest in the property insured, which has, to some extent, *reduced* the real interest of the assured.

4. Because if it was the intention of the company to provide against judgments obtained subsequent to the policy, different language would have been used. They would have said, " if judgments, mortgages, or other liens should be entered against the property insured," not should there, during the life of the policy, " an encumbrance fall or be executed upon the property insured."

[Brown *et al. v.* Commonwealth Mutual Insurance Co.]

5. Because the words "and the assured shall neglect or fail to obtain the consent of the company thereto," indicates that the provision has reference to a sale of a portion of the property, or an association of another or others with the assured in the title to the property insured. And,

6. Because it is not a matter of interest to a company like this to be informed about judgments subsequently obtained. That is a matter in which "mutual companies" alone are interested. They are interested because the premium note is to be paid in case of a fire, and the judgments indicate an inability to meet it. Not so with this company. Here the premium was paid in advance.

But suppose this paragraph does refer to real estate, and that the words "encumbrance fall or be executed upon the property insured" embrace judgments, it does not refer to *the judgments* given in evidence in this case. The policy is dated April the 11th 1857, and is for one year. The building was burned on the night of the 10th of February 1858. The five first judgments, obtained before the date of the policy, have nothing to do with this question, nor have the judgments, obtained after the date of the policy and before the fire, anything to do with it, because,

1. There is not one of them against the plaintiffs in this suit. Each judgment is against one of the plaintiffs, but in connection with another or others.

2. If it had been intended to extend the paragraph thus far, other words would have been used. The words "and the assured shall neglect or fail to obtain the consent of the company thereto" would not have been used. These words assume that the assured, by request, could obtain the consent of the company, and that the encumbrances only concern the assured and the company—not the assured, the company, and others.

3. Because the paragraph contemplates that the encumbrances shall be confined to the property insured, or to the assured and their property—not extended to them and their property, and to all others.

4. Because the words of the paragraph appear to contemplate "*an encumbrance*," which, of itself, will reduce the interest of the assured in the property—not a number of liens, like the judgments given in evidence in this case. And,

5. Because it is an unreasonable construction of this paragraph to so extend it as to make it necessary for the assured to obtain the consent of the company that a judgment, the recovery of which they are resisting, shall be entered against them, or the policy shall be void.

*W. A. Galbraith*, for defendants, argued that it was part of the contract of the parties, a warranty on the part of the

assured, that on the happening of a certain contingency, the company should be notified, and their consent obtained to the continuance of the insurance, or that otherwise the policy should be void, and that as the contingency (to wit, encumbrance by liens) did happen, without the consent of the company, or notice, the policy *was* void.

In reply to what was said about the condition referring only to personal property, he contended that the language was applicable to both real and personal property, the policies being framed for either.

That the encumbrances, though they might not affect the title, diminished " the interest" which the assured held in the property, and constituted one of the considerations affecting risks, and were material elements in the contract of insurance; citing Davenport *v.* The New England Mutual Insurance Company, 6 Cushing 340. That even if mutual companies were more interested in this inquiry than others, the parties here had made this a part of their contract, which is the law of the present case : Brown's Maxims 439 ; Trask *v.* The State Fire and Marine Insurance Company, 5 Casey 198 ; N. W. Insurance Company *v.* The Phœnix Oil and Candle Company, 7 Casey 448.

The opinion of the court was delivered, January 6th 1862, by
Woodward, J.—If we entertained more doubt than we do in respect to the soundness of the court's ruling of the first point propounded by the defendant, we should feel obliged to affirm the judgment on the third point. For that point was vital, and we think it was correctly ruled against the plaintiffs.

They had accepted a policy, the 14th condition of which was in these words : " And should there during the life of the policy an encumbrance fall or be executed upon the property insured, sufficient to reduce the real interest of the insured in the same to a sum only equal to or below the amount insured, or if it shall be levied upon or taken into possession or custody under execution or other proceeding at law or equity, and the assured shall neglect or fail to obtain consent of the company thereto, then and in that case the policy shall be void."

This condition is awkwardly expressed, but, found in a policy which is used to insure both real and personal property, we have no doubt it applies to both forms of property, and that it means that the owner's interest shall not be reduced to or below the amount insured, by encumbrances in whatever form, nor be taken in execution without notice to the company. The consent of the company to the encumbrance or the execution, though the thing provided for, is not the thing meant. The company might indeed consent to a voluntary encumbrance, but encumbrances which " fall" upon property, and custody which is taken under execu-

[Brown *et al. v.* Commonwealth Mutual Insurance Co.]

tion process, are generally involuntary—legal necessities—which do not wait on the consent of either the debtor or his underwriter, and to stipulate for corporate consent to such inevitable visitations would be absurd.  But as the company, on notice of a changed state of affairs, would have a right to revoke their policy, it was reasonable that they should stipulate for such notice.  Their consent to stand insurers would be implied after such notice, if there was no dissent.

And the principle on which this condition is founded is a sound one.  Insurance is seldom granted to the full value of the property.  The insurer wants the owner to be part insurer with him.  The insurer wants to keep the owner's interest on the side of preservation of the property instead of its destruction.  And in taking the insurance he has had reference to the character of the owner as well as of the property.  It has been considered whether the owner is a prudent, upright man—engaged in a lawful and safe employment, and whether his interest in the property exceeds the insurance asked for.  Hence the insurer wants to know whether any other policies have been purchased, whether any liens have already attached that would diminish the owner's interest, and whether during the life of the policy he grants, other insurance be obtained or other liens attach.  All this is necessary to an intelligent decision whether a proposed risk shall be assumed, or, if already taken, whether it shall be continued.  For insurers have learned enough of human nature to know that men take better care of their property whilst they retain a substantial interest in it, than after it has become encumbered beyond its value.

On some such views we suppose this condition was grounded.  It entitled the company to notice of the accumulation of liens to an amount sufficient to reduce the real interest of the owner to or below the amount insured.  It was in the nature of a covenant on the part of the assured that if such liens accrued, the company should have an opportunity to rescind the policy on repayment of a proportionate part of premium.  How was this covenant performed?

Not only had the plaintiffs suffered large liens to accumulate before they purchased the policy, but during its lifetime judgments to a very large amount were entered against one or the other or both of the plaintiffs.  The jury have found that these liens were largely beyond the value of the property.  They have found also that no notice whatever was given to the company of them.

Now here was a plain, wilful infraction of one of the material covenants of the instrument on which the plaintiffs sue.  Can they expect a court of justice to enforce performance of the defendants' covenants when they deliberately violate their own?

[Brown *et al. v.* Commonwealth Mutual Insurance Co.]

The court below referred the questions of fact to the jury, with instructions that if the facts were as the company alleged, the plaintiffs could not recover, and in this we think there was no error.

The judgment is affirmed.