# The Pennsylvania Insurance Co. *versus* Gottsman's Administrators.

*Effect of misrepresentation as to encumbrance in policy of insurance.—Notice of new liens, when necessary.*

1. The stipulation in an insurance policy requiring the person whose property is insured to give notice to the insurance company of an encumbrance or levy made upon the property insured, is a substantive and material part of the contract.

2. Where an insurance was made upon the liquors and furniture of a public-house, and in answer to an interrogatory, the person whose property was insured stated, that the liens upon her real estate amounted to a certain sum, when they really amounted to a much larger sum; and the condition to the policy stated that the policy should be void, if the answers thus made were not true: *Held*, that such answer is a warranty, and not merely a representation.

3. Where two executions were levied before the policy took effect, and one afterwards—all of which liens lasted until the fire occurred by which plaintiff's property was burned—*held*, that notice ought to have been given to the insurance company, and that for the want of such notice the right to recover was forfeited.

ERROR to the District Court of *Allegheny county.*

This was an action of covenant upon a policy of insurance, by

Ann Gottsman against The Pennsylvania Insurance Company. The material facts were these :—

On July 20th 1860, the Pennsylvania Insurance Company issued a policy of insurance to Mrs. Ann Gottsman, which it was agreed should date from June 20th 1860. It was for one year, and covered $1000 upon the hotel furniture, beds, &c., of the "Belvidere" Hotel, a few miles from Pittsburgh, $500 upon the liquors and bar fixtures, and $500 upon a barn near the hotel, making in all a risk of $2000, in consideration of a premium of $30. The house was separately insured for $5000. A fire occurred in the hotel on September 28th 1860, between two and three o'clock in the morning. The house was entirely consumed, as was also most of the furniture. The house was occupied at the time by Mr. Eichenlaub, a son-in-law of the plaintiff, and had been on fire a few months previously.

Eichenlaub was greatly embarrassed at the time of the fire, and proved at the trial to be wholly insolvent. The application for the insurance, upon which the policy sued on was issued, was made in writing by Mrs. Ann Gottsman. In it she represented that the property for which insurance was desired was not encumbered except " to the amount of $3000 on ground worth $10,000."

To a declaration in the usual form, the defendant pleaded *non est factum*, covenants performed *absque hoc*, and special pleas, setting forth a condition in the policy of insurance which provides that it should "become void if any encumbrance should be executed upon the property insured; or if it should be levied on or taken into custody without the consent of the company," and alleging that during the life of said policy there were executions issued and levies made upon the property insured of which defendants had no notice, and to which they did not consent. Defendants also pleaded a failure on the part of the assured to comply with a clause in the policy, requiring her to give immediate notice of loss, and to furnish a schedule of the articles destroyed or damaged, and also pleaded the precedency of sundry execution attachments served upon them as garnishees in judgments against the assured. Defendants also set forth in their pleas, Condition No. 3 in their policy, to wit: "If any person in obtaining insurance on his, her, or their buildings or goods, shall make any untrue representation, or neglect to disclose the nature and amount of all encumbrances, in case any exist thereon, whether of bond, judgment, mortgage, or liens of every other description, or cause the same to be described in the policy otherwise than they really are, said insurance shall be void and of no effect." And averred that this condition had not been complied with, that untrue representations were made, that there were numerous encumbrances upon the property insured at the

time of effecting the insurance, and which the plaintiff did not disclose.

While the suit was pending Mrs. Gottsman died, and her administrator was substituted.

It was testified, on the trial, that the hotel cost $9000, the furniture about $2000; that the barn was worth $1500, and the land about $5000. There was a mortgage on the property for $3000, which, with other encumbrances, amounted to $8173. After her death, the whole of the real estate was sold for $5705.75. On the 19th of June 1860, two executions for about $300 had been sued out, under which a levy was made on the personal property in the Belvidere Hotel, and on the 28th of September 1860, another execution was sued out, all which were undisposed of when the fire occurred.

Under these circumstances the defendants contended that the policy had been obtained by misrepresentation, and was therefore void.

The case was tried March 16th 1863, and a verdict rendered for plaintiff for $1698.75, subject to the opinion of the court on the following reserved points, viz.:—

1. Was the answer of Mrs. Gottsman in her application a technical warranty against liens?

2. Was the contract of insurance entire?

On argument, the court below entered judgment on the verdict. Which was the error assigned.

*James H. Hopkins* and *C. B. M. Smith*, for plaintiff in error.—
I. An express warranty is an agreement expressed in the policy, whereby the assured stipulates that certain facts are or shall be true, or certain acts shall be done relative to the risk: 1 Phil. on Ins. § 754. In this case there was the express agreement that if any person shall neglect or fail to disclose the nature and amount of all encumbrances, the insurance shall be void and of no effect, and, as if to relieve it from every difficulty of technical construction, it is stipulated that "the policy is accepted in reference to the provisions, stipulations, and conditions," which are declared to be a warrant on the part of the assured.

Being an express warranty, it matters not whether the thing warranted was material or wholly immaterial to the nature of the risk. The parties were competent to contract, and agreed upon the terms, and even if the assured without any motive, or upon mere caprice, had made a warranty, she would have been obliged to comply with it strictly, in order to derive any benefit from her policy: Ellis on Ins. 28; Ang. on Ins. § 143, note; Andrew v. Fitzgerald, 21 T. R. 245; 1 Phil. on Ins. § 874 a; 1 Marsh. on Ins. 347.

The learned judge who tried the cause in the court below, seemed to think that the defence would not avail unless the facts

[Pennsylvania Insurance Co. *v.* Gottsman's Administrators.]

concealed or the misrepresentations made were material to the risk. But it is submitted that this is a confounding of representation with a warranty. Representations are part of the proceedings preliminary to the contracts, and if false would not affect the policy unless they were material to the risk, that is, unless a knowledge of the truth would have induced the insurance company to decline the risk entirely, or charge a higher rate of premium. When a representation is inserted in a policy it becomes a warranty: Williams *v.* New Eng. Ins. Co., 31 Maine 219; Glendale Woollen Co. *v.* Protection Ins. Co., 21 Conn. 19.

If it were possible to consider the warranty in this case as a mere representation, the plaintiff's cause would not be much improved. For a knowledge of the facts concealed and misrepresented was material to the risk. The rate of premium charged by an insurance company is proportionate to the risk, and the extent of the risk depends not alone upon the occupation of the assured, nor upon the adjoiners and exposures, but as well upon the amount of interest the assured has in the property, and the inducements he may have to preserve his property or to destroy it, to be careful or criminal. One who is heavily in debt, and has unproductive property largely insured, might find the insurance-money much more desirable than his locked-up dead capital. Neither the law nor the principles of insurance offer any encouagement for fraud. Insurance companies have a right to know every fact which might determine the rate of premium to be charged, or which might induce them to decline the risk entirely: Smith *v.* The Columbia Ins. Co., 5 Harris 253; Brown *v.* Commonwealth Ins. Co., 5 Wright 187; Freismuth *v.* Agawam Ins. Co., 11 Cush. 588; Hayward *v.* New England Ins. Co., 10 Id. 444; Battle *v.* York County Ins. Co., 41 Maine 208; Brown *v.* People's Ins. Co., 11 Cush. 280; Smith *v.* Empire Ins. Co., 25 Barb. 497.

II. The next question is, whether the policy of insurance was an entire contract? Whether, conceding that there was misrepresentation and a violation of the warranty in regard to the encumbrances against the real estate, the entire policy was vitiated thereby, or whether it can be still held binding to cover the personal property?

The language of the agreement is, "if any untrue answer has been given to the interrogatories, then said policy of insurance shall be held to be void and of no effect;" and, again, "should there during the life of the policy be an encumbrance executed upon the property insured, &c., then and in that case the policy shall be void." If the policy is void, it is difficult to see how any of its clauses are valid.

Although there were several subjects of insurance, there was but one contract. There was but one consideration for the entire

[Pennsylvania Insurance Co. *v.* Gottsman's Administrators.]

risk. See Lee *v.* Howard Ins. Co., 3 Gray 583; Kimbal *v.* Howard Ins. Co., 8 Id. 33; Lovejoy *v.* Augusta Ins. Co., 45 Maine 472; Richardson *v.* Maine Ins. Co., 46 Id. 394; Fireman's Ins. Co. *v.* Assum, 5 Md. 165; Freismuth *v.* Agawam Ins. Co., 10 Cush. 587; Brown *v.* People's Ins. Co., 11 Id. 280; Smith *v.* Empire Ins. Co., 25 Barb. 497.

The decision of the court below cannot be reconciled with these authorities, nor with the substantial reasons on which they are based. And as no attempt was made to justify the judgment there pronounced, we cannot anticipate the logic by which it is to be sustained.

III. There is another reason why the court below erred in entering judgment for the plaintiff. It was proved by the deputy sheriff, and by Execution No. 174, July Term 1860, that a levy was made on the household furniture, bar fixtures, and liquors at the Belvidere Hotel, on June 19th 1860, the day before application was made for insurance upon those very articles, and more than a month before the policy was issued. This fact was not disclosed to the company. Was not its concealment a violation of the 2d condition of insurance, which provides, "if any person in obtaining insurance on his, her, or their goods, shall neglect to disclose the nature and amount of all encumbrances, if any exist thereon, whether of bond, judgment, mortgage, or liens of every other description, such insurance shall be void and of no effect"? A levy made was certainly a lien upon the property, and a neglect to disclose the fact was a violation of the contract, and rendered it absolutely void by its express conditions. Whether or not the sheriff's levy made insurance so desirable and so promptly sought for, it was obligatory upon the assured to inform the company of the truth. There were other executions and levies after the policy was issued, and which would come under the decision of this court in The Commonwealth Ins. Co. *v.* Berger & Bro., Leg. Int. Dec. 19th 1862. (See 6 Wr. 285.) The 6th condition in the policy applies to such cases. But the point we now raise is different. Here was a misrepresentation and a warranty, which, not being complied with, rendered the policy void *ab initio*.

*John Barton*, for defendant in error.—The learned judge who tried the cause in the court below, instructed the jury that the words used in the application did not amount to a warranty, but only to a representation, and submitted to the jury the question "whether the disclosure of the fact of the existence of these liens would have induced the company to decline the risk or increase the premium, and if it would, then you will find for the defendant." The jury found this point in favour of this plaintiff below.

There is no doubt but what under the decisions of the court

[Pennsylvania Insurance Co. *v.* Gottsman's Administrators.]

the ruling was correct, were it not for the clause inserted among the sixteen conditions, to wit: that the representations made shall be considered warranties; that is, they insert in their policy that words shall have a different meaning from the ordinary common-sense and legal interpretation. Can the insurance company make that which is in law only a representation a warranty by calling it by another name?

But even if it was a warranty, still we would be entitled to judgment on the second point reserved. Was this an entire contract? It was but one deed, but containing different and independent conditions and covenants. The cases, 7 Hill 122 and 25 Barbour 497, were both cases in which the risk taken was upon the buildings and personal property therein, and were put upon the ground expressly that the personal property, being in the same building, was subject to the same risk as the real estate, and the inducement to destroy the property for the sake of the insurance was the same.

Here the property destroyed was not on the real estate covered by the policy; the personal property was burned, but all the real estate was not. The policy describes and values the real estate insured, and also describes, values, and gives the location of the personal property, and were inserted in the same policy only as a matter of convenience and economy. The jury have found that there was no wilful or fraudulent concealment or representation as to these liens, and that the company would not have required a higher rate of premium even had they all been specified in the application.

"Whether a fact concealed from underwriters was material to the risk is matter of fact;" "the question of the concealment is for the jury to decide;" "a misrepresentation to avoid a policy must not only be false but it must be material:" Pine *v.* Vanugum, 3 Yeates 30; Kohn *v.* N. A. Ins. Co., 4 Binn. 224; Closon *v.* Smith, 3 W. C. C. R. 156; Cole *v.* Marine Ins. Co., Id. 154.

Condition No. 6 of this policy is the same as the condition in the Commonwealth policy passed upon in the case of Berger & Brother, reported in the Leg. Int., No. 51, vol. 19. There this court decided that there must be an actual taking of possession by the sheriff to constitute a lien or levy within the meaning of this condition.

The opinion of the court was delivered, January 7th 1864, by WOODWARD, C. J.—It seems to us quite unnecessary to go into the learning on the distinctions betwixt warranty and representations in a policy of insurance, and betwixt contracts that are several and entire, because the policy in this instance stipulated expressly that it should be void and of no effect if the assured should neglect to disclose the amount and nature of all

encumbrances, or fail to obtain the consent of the company to any encumbrance that should be executed upon the property insured, or any levy of execution upon it during the life of the policy. What is meant by this stipulation about "*consent*" to encumbrances and levies is explained in the 5th clause of conditions, which requires the assured to give immediate notice of all encumbrances to the company; to pay such additional premium as they shall determine, and obtain their written consent to the continuation of the policy. If property, either real or personal, is unencumbered when insured, but becomes encumbered, or is taken in execution during the life of the policy, the premium is deemed inadequate, and the company must have the opportunity of charging an additional premium, and therefore the stipulation for notice of such encumbrance or levy is a substantive and material part of the contract. It does not involve a question for the jury as to an increase of risk. The policy assumes that the risk is increased, and hence the necessity for an increase of premium. And this assumption, on which the contract is based, is justified by all experience; for encumbrances diminish the interest of the assured in the property, and levies disturb his possession, and both of these things increase the risk. The company takes insurance at less than the value of the property, that the owner may have an interest in protecting and preserving it —may be, in effect, part insurer. But when, through liens or levies, the owner's interest is extinguished or diminished, the company loses the benefit of this joint insurance, and must be compensated therefor by another premium.

Such is the reason for the notice. We stated it more at large in Brown's Case, 5 Wright 193. It was expressly stipulated for in this instance, and the validity of the policy was made to depend upon it. Yet it was wholly neglected. The policy was dated July 26th 1860, but took effect from June 20th 1860, for one year, and was upon hotel furniture in the Belvidere House, liquors and bar fixtures, and upon a barn and stable on the premises. Then it was shown in evidence that, on the 19th of June 1860, the sheriff had levied two executions, amounting together to near three hundred dollars, on the personal property at the Belvidere, and on the 28th of July 1860, another execution, amount not stated, was levied on the same goods, and that these levies were undisposed of when the fire occurred on the night of the 28th of September 1860. It was shown also that in her application Mrs. Gottsman had stated the encumbrances on her real estate to be $3000 on ten acres of ground, worth $10,000, but that they amounted in fact to $8173, and that the realty sold for $5705.75.

Upon this evidence the company insisted that Mrs. Gottsman had been guilty of a breach of warranty in misrepresenting the

liens on the real estate, and the court got entangled in nice distinctions betwen warranties and representations. Wherefore? What had misrepresentations about real estate to do with this insurance on tavern furniture? It is true, the barn or stable was included in the policy, but we do not learn that it was burned, and from the amount of the verdict, we presume it was not. Nor do we know that it was situated upon the ten acres of land of which Mrs. Gottsman spoke in answer to the interrogatory. The house was not included in this policy, but is said to have been insured in another company. The executions were liens on the goods insured, but the liens alluded to in the answers to interrogatories were not, for these were judgments merely on other securities, which constituted only liens on the realty. If the interrogatory was broad enough to include the liens of the executions, the answer most manifestly had reference to real estate, and therefore was irrelevant to a policy on personal goods, and consequently irrelevant to the issue on trial.

If this conclusion be not correct on account of .the barn being included in the policy, then we have no difficulty in saying that under all the terms of the policy, that answer was evidently a warranty, and the learned judge was in error in treating it merely as a representation.

The better opinion, however, is that the sixth point presented the very issue upon the record, and ought to have been affirmed. Two executions levied before the policy took effect, and one afterwards—all of which liens lasted until the fire occurred—so affected Mrs. Gottsman's interest in the goods that she was bound by the very terms of the contract to give notice of them to the company. Failing to do so, she forfeited her policy. The ground of forfeiture is the contract, not the opinion of a jury about increase of risk. The contract which works the forfeiture, assumed, itself, that such levies would increase the risk, and hence the provision for notice and more. premium. The suit is upon that contract, and if it is forfeit, the suit falls with it. It cannot be enforced in behalf of a party who violated a fundamental condition.

The assignment of errors is so badly expressed that there is some ground to doubt whether it covers this answer of the court to the sixth point; but as there was manifest error, both in the answer to this point and in ruling .against the warranty, we deem it our duty to reverse the judgment.

It may be said, in excuse of Mrs. Gottsman's failure to give notice of the levies, that .she probably depended on the tenant, who was her son-in-law; but this, while it may acquit her memory of a suspicion of bad faith, cannot alter the legal effect of her contract. If she was deceived, imposed upon, or overreached in being got into such a contract, that would be legitimate ground

[Pennsylvania Insurance Co. *v.* Gottsman's Administrators.]

of defence. Ignorant people do no doubt often take policies of insurance without reading or understanding the multitudinous conditions with which they abound; but where, as here, the only question is whether the contract shall be administered as it is expressed, we must give due effect to every part of it, and not allow a party to appropriate its benefits who has disregarded its conditions.

The judgment is reversed, and a *venire facias de novo* is awarded.