# PENN. MUT. FIRE INS. CO. v. FRANK SCHMIDT.

ERROR TO THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY.

Argued February 15, 1888—Decided April 2, 1888.

A policy of fire insurance issued contained a condition that if the property should become incumbered and the assured should neglect or fail to give notice thereof and pay the additional premium which might be required, the policy should be void.

At the date of the policy the property was subject to a mortgage of $4,000 of which the insurers had notice. Afterward, but before the loss, the assured accepted the office of treasurer of a hook and ladder company

and gave an official bond in $500 upon an engagement with the obligees that it should not be put in judgment.

Still before the loss, the assured paid $1,000 upon the mortgage incumbrance, and judgment had been entered upon the official bond but without his knowledge until after the loss, when he surrendered his office and had the judgment satisfied of record.

In an action afterward brought to recover upon the policy, *Held :*

1. That, it was error to admit in evidence the circumstances under which the official bond was given, because, by the entry of the judgment thereon even without the knowledge of the assured, the policy became void unless its condition was fulfilled.

2. Whether, in view of the fact that at the date of the loss the amount of the incumbrances was less than at the date of the policy, the policy was vitiated by the entry of the judgment, not decided.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 22 January Term 1888, Sup. Ct.; court below, No. 312 July Term 1884; C. P.

On June 25, 1884, an action of covenant was brought by Frank Schmidt against the Pennsylvania Mutual Fire Insurance Company, to recover upon a policy issued on January 17, 1882, for three years, to the amount of $1,100. The pleas were non est factum, covenants performed absque hoc.

At the trial on March 23, 1887, it was made to appear that the policy in suit contained as one of its conditions the following :—

7. If the property insured shall be incumbered at or after the date of this policy by mortgage, judgment, mechanics' lien, or otherwise by any legal proceedings, or levied upon or taken into possession or custody under an execution or other proceeding at law or equity, and the assured shall neglect or fail to give written notice thereof and pay such additional premium as the company shall determine, and obtain a written consent of the company to the continuance of the policy, such insurance shall be void and of no effect.

It appeared further that at the date of the policy the property was subject to a purchase money mortgage for $4,000 securing four bonds in judgment for $1,000 each, and that the existence of this incumbrance was noted in the application, and the loss if any made payable to the mortgagee as his in-

terest might appear; that after the date of the policy and before the fire on November 12, 1883, which totally destroyed the property insured, the plaintiff paid off one of the $1,000 judgments and satisfaction thereof was entered of record on January 9, 1883.

After the close of the plaintiff's case, the defendant company put in evidence a judgment against Frank Schmidt and John Ladwigg in favor of German Gregory and others, trustees of the Hook and Ladder Co. No. 1 of Shenandoah, for $500, entered on September 4, 1883, on a judgment bond dated February 13, 1883, conditioned for the faithful performance by Frank Schmidt of the duties of the treasurer of the said company.

In the plaintiff's case in rebuttal, the plaintiff was called:

Counsel proposed to prove by the witness under what circumstances and upon what conditions the hook and ladder company bond was given; that it was given upon the express condition that judgment was not to be entered upon it, and judgment was entered in bad faith and in breach of that condition, and that the plaintiff knew nothing of the entry of the judgment until after the fire. The offer was objected to as incompetent, irrelevant and immaterial.

By the court: With reference to this offer to show that the bond given to the hook and ladder company by the plaintiff as treasurer of that company should not be entered up, and that it was signed upon that condition, we have examined all the authorities we have been able to find since the adjournment of the court. The opinion in the case of Seybert and this company, 103 Pa. 282, was delivered by Justice PAXSON in 1883, and we find two other cases, one the case of Thierolf v. Universal Fire Insurance Company, 110 Pa. 37, also an opinion by the same judge delivered in 1885 in which there was an incumbrance upon the property insured and also upon other property not insured. The Supreme Court held that it did not in itself avoid the policy, although there was a condition in the policy that an incumbrance upon the property not made known should avoid the policy. Then there is in the case of the Lebanon Mutual Insurance Company v. Losch, also, an incumbrance that was in existence at the time the insurance was taken out, and an answer in the application that there were no incum-

brances. For the reasons therein stated, that was held not to void the policy. Now, we recognize the force of the decision of Seibert v. Insurance Co., but that decision holds that the fact as claimed by the insured that he did not know that the incumbrance had been entered up, or that it had become an incumbrance upon the company by entering was no excuse, for the reason that it was his duty to know that it might be entered by them any time, he having given the power to enter a judgment against him.

Here the proposition is, as I understand the offer, to show that the plaintiff had no reason to know that this would be entered up, because of a contract that it should not be entered or be made. an incumbrance upon his property ; and we think, as bearing upon the question of his knowledge of its entry and therefore upon the question of his omitting to make known the fact to the company, that the testimony should be heard. The effect of it will have to be determined after we know what it is.[1]

Under this offer, the plaintiff testified, in substance, that he had been chosen the treasurer of the hook and ladder company and had informed the officers thereof that he would not accept the appointment if he had to give a bond and that bond was to be entered up, as it would interfere with his business, and that it was agreed that judgment would not be entered on the bond ; that when he objected that the entry of judgment would injure his business, he meant all his business transactions, but he did not mention his insurance to the company ; that the trustees of the hook and ladder company were changed every six months, and he never knew' that judgment had been entered upon the bond until February 24, 1884, when he made an affidavit relating to his insurance and loss in the presence of an agent of the defendant company by whom he was then first informed of it, and that soon afterward he turned in the funds of the hook and ladder company, ceased to be their treasurer and on March 19, 1884, the judgment was satisfied. In this testimony the plaintiff was corroborated by several witnesses.

At the close of the testimony, the defendant requested the court to instruct the jury :

1. That, under all the evidence in the case, the verdict should be for the defendant.

Charge of Court below.

The plaintiff presented three points for instructions, one of which was :

2. That, the evidence showing that of the $4,000 incumbrance on the property insured at the time of the insurance, $1,000 was paid off before the fire, and that at the time of the fire there were only $3,500 of incumbrances on the property, being $500 less than there was at the time of insurance, this case does not come within the scope and purpose of the 7th clause in the conditions of insurance, and the policy is not vitiated by the entry of the $500 judgment.

The court, BECHTEL, J., after fully reviewing the testimony, charged the jury as follows :

We have concluded to submit to you the question whether or not under all the testimony before you this condition of this policy has been violated; whether there has been a misrepresentation, a concealment or a fraud practiced upon the company, or whether there has been any false swearing; with the instruction that if you find that the plaintiff has misrepresented, or concealed, or practiced fraud upon the company, or has sworn falsely in the particulars claimed by the defendant in this case, then he has violated this condition of the contract, and under the plain reading of the contract itself it prevents him from recovering any thing, and it would be your duty in case you so find, to find a verdict in favor of the defendant. It would be a complete answer to the entire policy.

If upon the other hand you come to the conclusion from the testimony before you that there were no misrepresentations made, that there has been no concealment, no fraud practiced, and no false swearing, then the provision of the policy has not been violated and he would not be prevented from recovering under that clause of the policy.

[It is also claimed by the defendant that under the 7th section of the policy he is prevented from recovering anything in this case and we will direct your attention now to that.

There is no controversy about the fact that the bond given to the hook and ladder company was entered before the loss occurred, before the fire, and after the time that the insurance had been obtained upon the property; nor that it was satisfied on March 19, 1884, as appears from the record. Now, if you

should find that, at the time this bond was given, it was executed by the plaintiff with the express agreement between the plaintiff and the hook and ladder company to whom it was given that it should not be entered up, and that the bond was entered in violation of that agreement; that Schmidt, the plaintiff, had no knowledge of the fact that the bond had been entered until after the fire occurred, when the affidavit was brought to him by Young and Shoemaker, then we think the conditions of this policy or these conditions of the policy were not violated, because he was unable to inform the company of the existence of that of which he had no knowledge, and he was not in the position that he would have been in, if there was no such agreement made between him and the company. In other words, if you find that his failure or neglect to give notice in writing to the company of the entry of this incumbrance was due to the want of knowledge, and an entry of the incumbrance that was contrary to his contract with the hook and ladder company, then we do not think it would in itself prevent a recovery.

If, upon the other hand, there was no contract between him and the company that it should not be entered up, but simply that the trustees should hold it, then he would be in the position of having the incumbrance entered up against him and in the position of being bound to know that it might at any time be entered against him, and he would be required to notify the company, and if he failed to do so, his policy would be void, and, of course, he could recover nothing. And as you determine the question to which we have thus directed your attention, you will determine whether or not by virtue of the entry of this bond this policy has become void or not.] [2] . . .

[As to the point that has been submitted to us on the part of the defendant which requests us to say to you that under all the evidence in this case the verdict should be for the defendant, we decline to so instruct you. This instruction may require us to consider this matter hereafter, should your action require it necessary, but for the present, we refuse to so instruct you.] [3]

As to the three points submitted on the part of the plaintiff, all we will have to say is that we regard what we have said to you, as to the clauses and conditions of this policy and the

subjects upon which these three points bear, fully answers these points, and we will therefore say that the three points on the part of the plaintiff are answered by the general charge. You must fix the exact amount, if you find in favor of the plaintiff, in dollars and cents.

The verdict of the jury was in favor of the plaintiff for $1,297.45. Subsequently, in refusing a motion for a new trial, the court, BECHTEL, J., after referring to the facts and the seventh condition of the policy held:

Conditions of this character are not to be construed against the assured, but rather in his favor.

In the Insurance Co. v. Mills, 44 Pa. 241, a condition in a policy that the insurance should cease from the time that the property insured should be "levied on or taken into possession or custody under an execution or other proceedings at law or equity" was held not to apply to a wrongful levy. In the Insurance Co. v. O'Maley, 82 Pa. 400, we find the same condition in the policy, and though a mechanics' lien was filed against the property insured, judgment obtained, levari facias issued, property levied upon and advertised for sale, and destroyed by fire the day before the sale, yet the company was held liable. This is put upon the ground that this condition applies more especially to personal property, and as to the levy, that there was no seizure in fact, and the property was not taken out of the possession of the assured, and the seizure was, therefore, unattended by increased risk. The Commonwealth Insurance Co. v. Berger, 42 Pa. 285, and Smith v. The Insurance Co., 89 Pa. 291, are cases of like character.

It will be noticed from the condition of the policy before us that it is necessary that the assured shall have failed to give notice of an incumbrance upon his property, pay an additional premium, and obtain consent of the company to the continuance of the policy, in order that the company may avoid his policy. For this reason the plaintiff was permitted to show that at the time he gave this bond, it was given upon the express condition and agreement that it should not be entered up against him, because it would injure his business; that he declined to accept the office of treasurer if the bond was to be entered up, and that thereupon the company agreed at their

meeting to accept the bond, place it in the hands of the trustees, and that it should not be entered up. This was shown not only by his testimony, but by the testimony of Daniel Neiswenter, a member, and German Gregory and Jos. Deiter, trustees of the hook and ladder company, and to some extent by the minute book of said company. The bond was delivered to the then trustees, and subsequently other trustees seem to have been elected, and about that time this bond was entered up. The plaintiff testified that he had no knowledge of this entry until after the fire, when he declined to longer act as treasurer, and the judgment was satisfied. Was this such a transaction as required the court to direct a verdict for the defendant, thereby holding the plaintiff responsible, just as though there never had been a contract forbidding the entry of the bond, or as though it had been legally and justly entered?

In Seybert v. Penn. M. F. Ins. Co., 103 Pa. 282, we find the same clause in the policy, and after the insurance, the assured gave a judgment bond for $8,000 to the sheriff conditioned for the forthcoming of certain goods. This bond was entered up, and although the assured alleged he had no knowledge of such entry, yet the court held the policy was rendered void by such entry. The ground upon which this decision is put is to be found in this language: "It was entered upon his confession, and he is chargeable with knowledge. A man who gives a judgment or mortgage knows that it may, and probably will, be placed on record. He may not have actual knowledge of the time of its entry, but the act is his, and he must be held responsible therefor." We think the facts of this case entirely different from the facts in the case before us. Here we have an express agreement that the bond shall not be entered, and until the treasurer (the assured) failed in his duty as treasurer, the company had no power to enter the bond without violating their express contract. Might not the assured rest upon the belief that the company would observe the contract, and that until he did some wrongful act in his official duties, or failed to perform the same, the bond could not and would not be entered? Having been entered in violation of this contract, would not the court have stricken it off, upon the plaintiff proving the same? And, if so, was it then ever such a lien upon the property as would avoid the policy?

But we think there is another matter well worthy of consideration in determining this question. At the time this property was insured, there were $4,000 of liens upon it, the existence of which was disclosed to the company. Ten months before the fire occurred, and eight months before the hook and ladder Co.'s judgment was entered, $1,000 of this indebtedness was paid, and the bond satisfied of record. Therefore, there was neither at the time of the fire nor at the time the treasurer's bond was entered as much incumbrance upon the property as at the time the policy issued. Hence, whether the treasurer's bond be regarded as a good lien or not, there never was any increase of risk to the company, for the assured had a greater interest in his property when his liabilities were $3,500 than when they were $4,000.

Our attention has been directed to the case of Thierolf v. The Fire Ins. Co., 110 Pa. 37, in which it appears that the assured failed to disclose the existence of a judgment which was a lien upon the property insured, in his proof of loss, and the company under a clause in the policy claimed that he could not recover. There was no dispute as to the judgment being a lien ; but the assured testified he did not know it was a lien upon the property insured, but believed it was a lien upon the other real estate only. Justice PAXSON filed the opinion in Seybert v. Penn. M. F. Ins. Co., supra, in 1883, and the same learned justice filed the opinion in this case in 1885. In discussing the effect of the failure to disclose the existence of this judgment, Justice PAXSON says : "For the purpose of this case, we must consider it an honest mistake. Does it avoid the policy? If it does, I would be ashamed to sit here and say so. The section of the policy referred to evidently contemplates fraud or wilful misrepresentation. . . . . A comparison of the proofs of loss with the policy, shows that all requirements have been substantially complied with, excepting in the omission to note the incumbrance. This, as before observed, was an innocent mistake; and as it has not been shown, and doubtless cannot be, that the omission has in any manner prejudiced the company, we see no reason why the proof of loss should not have been submitted to the jury." Much of this language would seem to be applicable to the case before us. This plaintiff's loss is undoubtedly an honest

one. The incumbrances upon his property never were increased after the policy issued, but upon the contrary, were decreased, and every dollar of the liens has since• been discharged. His property was never levied. upon or seized by any officer for any debt. The $500 judgment was entered without his knowledge, and in violation of his express contract that it should not be entered. Can it be that the plaintiff must lose his insurance under such circumstances? We do not believe that such is the meaning of our authorities, and, therefore, refuse a new trial.

Judgment then being entered upon the verdict, the plaintiff took this writ, assigning as error :

1. The admission of the plaintiff's offer.[1]
2. The part of the charge embraced in [ ] [2]
3. The part of the charge embraced in [ ] [3]

*Mr. James Ryon* (with him *Mr. George W. Ryon*), for the plaintiff in error:

1. The materiality of the seventh condition of the policy is manifest; why the plaintiff neglected or failed to perform it was immaterial. The amount of incumbrance is regarded in accepting the risk in consideration of the motive the assured may have in the preservation of the property, and in mutual companies it affects the value of the lien which is the security for the assessments : May, Insurance, 290. Brown v. Insurance Co., 41 Pa. 187. The assured, therefore, contracted with others insuring that no liens should be entered against the property insured without the consent of the company. It is not a question of notice, intention, representation, fraud or knowledge.

2. A condition, expressed as such in a fire policy, defeats the insurance if not complied with, whether it is material to the risk or not, and whether non-compliance be with or without the act or privity of the assured: 1 Phillips, Insurance, 478, § 866; Penn. Ins. Co. v. Gottsman, 48 Pa. 151; Glendale Woolen Co. v. Insurance Co., 21 Conn. 19. The policy is the law of the relation between insurer and insured : West Branch Ins. Co. v. Helfenstein, 40 Pa. 296; Trask v. Insurance Co., 29 Pa. 198; Northwestern Ins. Co. v. Phoenix Oil Co., 31 Pa.

448; Insurance Co. v. O'Maley, 82 Pa. 400; Smith v. Insurance Co., 89 Pa. 287.

3. There is no question of fact to be found as to whether the risk is increased, for the policy assumes that the risk is increased, and hence the necessity for an increase of the premium. And upon notice of the additional lien, the company would have the right to cancel the policy on surrender of a proportionate part of the premium. The authorities sustain these views: Brown v. Insurance Co., 41 Pa. 187; Penn. Ins. Co. v. Gottsman, 48 Pa. 151; Nassauer v. Insurance Co., 109 Pa. 507; Seybert v. Insurance Co., 103 Pa. 282.

*Mr. A. W. Schalck* (with him *Mr. M. M. L' Velle*), for the defendant in error:

1. The condition is not to be construed literally. Such clauses are construed most favorably to the assured, and therefore we hold that the condition referred to rightful and authorized liens, as distinguished from those that are the opposite: Mills v. Insurance Co., 5 Phila. 28, affirmed in Insurance Co. v. Mills, 44 Pa. 243; Commonwealth Ins. Co. v. Berger, 42 Pa. 285; Western Insurance Co. v. Cropper, 32 Pa. 351; S. P. Ins. Co. v. O'Maley, 82 Pa. 400; Smith v. Insurance Co., 89 Pa. 287; Runkel v. Insurance Co., 6 Fed. R. 140; Thompson v. Witman, 18 Wall. 457; Knowles v. Gaslight Co., 19 Wall. 58; Somerset Ins. Co. v. McAnally, 46 Pa. 41; Lycoming Ins. Co. v. Jackson, 83 Ills. 302.

2. The cases relied on by the defendant are inapplicable. In Penn. Ins. Co. v. Gottsman, 48 Pa. 151, the answers in the application were expressly made warranties, and existing incumbrances were undisclosed. In Nassauer v. Insurance Co., 109 Pa. 507, there was no explanation or excuse given for the want of notice. In Seybert v. Insurance Co., 103 Pa. 282, Seybert not only knew when he gave the bond that it might be entered up, but it was evidently understood and intended that it should be entered, and there was no evidence that he was ignorant that it was entered, much less was it pretended that there was any agreement not to enter it.

3. We submit that, even if this judgment were an incumbrance within the condition, the fact that the incumbrances, including this judgment, were less in amount at the time of

the fire than at the date of the policy, takes the case out of the rule. The plaintiff's indebtedness at the date of the fire being less than at the date of the policy, his motive for the preservation of the property was the greater, and the risk and hazard of the company so much the less: May, Insurance, § 290; Nassauer v. Insurance Co., 109 Pa. 512.

OPINION, MR. JUSTICE PAXSON:

The policy of insurance upon which this suit was brought in the court below contained a covenant against incumbrances. It was in the usual form and need not be here repeated. During the life of the policy a judgment of $500 was entered against the insured, which was a lien upon the premises covered by the policy, and remained a lien to the time of the fire. No notice was given to the company of this incumbrance, as was required by the terms of the policy.

Upon the trial below the court permitted the plaintiff to prove that he did not know of the entry of the judgment; that the same was given upon the expressed condition that it was not to be entered up in the prothonotary's office, and that the entering of it was done in bad faith, in breach of that condition, without the knowledge and consent of plaintiff, etc. The admission of this evidence forms the subject of the first specification. The second specification refers to the charge of the court and alleges error in submitting to the jury the question of plaintiff's knowledge of the entering of the judgment.

We think it was error to admit this evidence. The clause in the policy is a covenant against incumbrances. It was therefore immaterial whether the plaintiff had actual knowledge of the judgment or not. He was bound to know it. He had covenanted against it. The judgment was his act; it was entered upon his warrant of attorney, and after the fire he paid it and had it satisfied. That it was given under an agreement of the hook and ladder company not to enter it up, and that the company violated said agreement is not to the purpose. It is possible he may have his remedy against that company for any loss he may sustain by reason of their breach of faith, but this act of a third party can in no way affect this contract of insurance. The covenant against incumbrances is a reasonable covenant, and the principle upon which it is found-

ed is a sound one.    Brown v. Fire Ins. Co., 41 Pa. 187.    It goes upon the theory of an increased risk by reason of incumbrances.    If a man may incumber his property to its full value and then insure it for its full value, it is easy to see how fires may be turned into a source of profit.    That the risk was increased by the entry of this judgment is assumed by the terms of the policy.    It is not, therefore, an open question.    The company has not received the premium for this increase of the risk, and not being itself in default is not bound to indemnify without receiving the consideration for such indemnity.    This position is fully sustained by the authorities.    It is sufficient to refer to Brown v. The Ins. Co., supra; Insurance Co. v. Gottsman, 48 Pa. 151; Seybert v. Penn. M. F. Ins. Co., 103 Pa. 282.

While this case must be reversed for the errors referred to, it is a serious question how far another trial will help the defendant company, in view of the admitted fact that the $500 judgment did not increase the incumbrances.    On the contrary, when that judgment was entered, one of the previous judgments of $1,000 had been paid and the record satisfied.    So that in point of fact instead of incumbrances to the amount authorized by the company, $4,000, there was only $3,500 against it.    This question was raised by the plaintiff's second point and denied by the learned judge in his general charge. The ruling being in favor of the company, could not be assigned for error upon their writ and they have not been heard upon it.    The learned judge, while ruling this question adversely to the plaintiff in his charge, appears to incline to the other view of it in his opinion refusing to grant a new trial. As the question is not before us, we will not rule it now.    It can be properly raised and squarely decided upon another trial.    It is an important question in the case.

The judgment is reversed, and a venire facias de novo awarded.