SCHOOL DISTRICT No. 6 IN DRESDEN,

*vs.*

ÆTNA INSURANCE COMPANY.

Where a committee were authorized by vote of a school district to sell a school-house, a sale thereof on credit, instead of for cash, is void, unless ratified by the district afterwards.

Where the committee kept the proceeds of sale in their own hands, making no report in any form to the district of their doings, the district never receiving or using such proceeds, or having any benefit therefrom, but at the first corporate meeting held after such sale, passing votes condemnatory thereof; no ratification can be inferred, although no district meeting was held for some months after such sale was known to individuals in the district, during which time the house was removed from the site it stood upon, by the vendees.

A verdict will not be set aside on account of the admission of improper evidence, rendered immaterial by a special finding in the case, on a point to which that evidence had no relation.

School District v. Ætna Ins. Co.

On exceptions and motion for new trial.

Assumpsit upon a policy of fire insurance on a school-house, dated March 1, 1860 ; and a renewal thereof April 1, 1861, for one year. The writ is dated November 23, 1861. This case has been before considered by the court, on other questions raised by it. 54 Maine, 505.

It was admitted, that proof of loss on May 11, 1861, was duly given and received, and that the house was of the value alleged in the writ.

In defence, were read the original application for a school district meeting, the record of the warrant calling the meeting, and the record of the doings of the meeting held June 4, 1860.

On an article in the warrant,—"to see if the district will vote to sell the new school-house therein, and pass any votes necessary to accomplish that purpose" the district voted" to sell the new school-house, and that Ephraim Alley, Edward Lawrence and Seth H. Whitcomb, be a committee to sell it." The bill of sale to the purchasers, Bickford & Houdlette, was read.

It appeared in evidence that the committee advertised for proposals to purchase on July 12, 1860, to be received until the nineteenth of that month. Notices were posted in three public places. The notices contained the terms of sale—"ten per cent. down, the balance in one year, with good security and interest." Five proposals were received by the committee. The year's credit was at the suggestion of the committee. The money and the notes received by the committee for the house, remained in their hands. There were two notes payable to the district or its order in one year with interest. One of the notes Lawrence signed as surety.

On the nineteenth of August following the sale, the purchasers removed the house to their lot, adjoining the school-house lot.

Against the objection of the defendants, the plaintiffs were permitted to read from the records of the district the call for a meeting on the first day of August at the school-house ; and there was evidence that the purchasers of the house, having the keys, would not open the house, and the meeting was not held.

The plaintiffs offered a "protest of certain voters of the school district, read in town meeting, when the division of the district was under consideration, March 11, 1861." The defendants' objection to this evidence was overruled. The remonstrants represent that they are a majority of the legal voters of the district, and set forth their reasons why the town should not divide the district, as requested by the vote of the district passed June 4, 1860.

There was evidence introduced for the plaintiffs, which they contended showed collusion or fraud between the committee and the purchasers.

P. F. Houdlette testified that he procured the renewal of the policy, "that he had a full knowledge of all the circumstances about the house and the controversy." Witness further testified : "When I asked for the renewal, I wrote that we have had a good deal of trouble in the district about the house ; and it has been moved about fifty feet to the west, and that would carry it that distance further from the nearest building."

The defendants put into the case the writ of the Plaintiffs v. Bickford & Houdlette, (the purchasers of the house) for carrying away the school-house, and converting it to their own use, on the nineteenth day of August, 1860. The date of the writ was March 27, 1861. This action has under it an entry, made at the present term, of "neither party."

The records of the district made part of the case.

Several instructions were given, by the request of the plaintiffs, among which were these :

That the committee were not authorized, by the vote under which they acted, to sell the school-house on credit.

That if they did sell it upon credit in part, receiving notes on a year's time for ninety per cent. of the price, and ten per cent. cash, and Lawrence has ever since retained the money and notes in his possession or control, and the committee never made any report of that sale to the district, or in any way informed the district of it at a legal meeting thereof, the sale did not transfer the house so as to prevent a recovery in this action, unless the district ratified the sale.

That the non-action of the district before this insurance was effected would not operate as a ratification in law if no report of the acts or doings of the committee had been made to the district, nor in any other way communicated to it.

The instructions, requested by the defendants, which were not given, appear in the argument in support of the defendants' exceptions. The judge submitted to the jury certain questions to be answered. The special findings were affirmed as special verdicts. What was the nature of the special findings of the jury, is sufficiently stated in the opinion.

*Wales Hubbard,* for the defendants.

Statement of the case and the issues made by the parties at the trial :

The plaintiffs owned a school-house ; and at a legal meeting, June 4, 1860, voted to sell it, and chose a committee to make the sale. The committee made the sale on the nineteenth of July following. The purchasers entered into possession of the house ; and soon after removed it to their own lot of land.

The defendants insured the building, against loss by fire, for one year from March 1, 1860. The policy was renewed for one year from April 1, 1861. The loss of the house by fire, May 11, 1861, was admitted.

Before the policy was renewed, the house had been sold, the purchasers were in possession, and the plaintiffs on the 27th of March, 1861, four days before the renewal, had commenced an action against the purchasers for a removal, and conversion of it to their own use.

The defence was, that when the policy was renewed the plaintiffs had neither title to, nor any insurable interest in, the house, and that there had been a change of title.

The plaintiffs contended, that the sale, made by their committee, was void for two reasons : I. That their committee exceeded their power by a sale on credit. II. That the sale was void on account of collusion or fraud between their committee and the purchasers.

These positions the defendants denied. These were the issues to be tried.

Is it not obvious, that all testimony respecting a division of the district was incompetent? It had no tendency whatever, to prove or disprove either of the matters in issue. It tended to lead the minds of the jury from the consideration of the real issues, and to create a prejudice injurious to the defendants.

Besides these, there are other reasons, why the "remonstrance" read in town meeting was improperly admitted. It shows an attempt, by persons claiming to be voters of the district, and to be a majority of them, to destroy the effect of a legal vote of the district. The record showed that thirty-nine voted to sell the house,—a majority of those voting. The remonstrance purports to be signed by forty-six members of the district opposed to the sale of the house and a division of the district; while this paper could properly have no effect upon a legal vote of the district, it was suited to deceive the jury, and lead them to suppose that the vote to sell the house was against the wishes of the majority; and to excite a strong prejudice unfavorable to a fair consideration of the true issues. No instruction was given to prevent these effects.

Nay, if a division of the district had been the issue to be tried, by what rule of evidence, would that paper be made competent evidence, to be read to the jury, and to be taken to their room to be re-read and examined?

The jury were instructed, "That the committee were not authorized by the vote, under which they acted, to sell the school-house on credit." Such is not the true rule of law. It prevents the consideration of the question of usage. The power of an agent is measured by usage. An agent "has authority to sell on credit, where such is the usage." *Upton v. Suffolk Co. Mills,* 11 Cush., 589. There may be no usage in Dresden, as to a sale of a school-house on credit; but there is such a usage, as to the sale of personal property; the consideration of which, the instruction excludes.

The cases cited in support of the instruction differ from the case at bar in material particulars. If bonds and other securities are

sent to a broker for sale, the usage is to sell for cash. But if the principal knows that these are advertised for sale, in whole or in part, on credit, and remains silent, he should not be permitted after the sale, to repudiate it.

The record of the district meeting, at which it was voted to sell the house, showed also a vote to apply to the town at its next annual meeting to divide the district. The sale of the house was not for the purpose of raising money for immediate use.

The defendants requested this instruction: "If the district wished to repudiate the sale, for the reason that the committee gave credit for a part of the purchase money, immediate action should have been taken to vacate the sale, and restore the money and the notes." This was given, omitting the word "immediate," and adding, "immediately after they [the district] had received them."

Thus modified, the instruction was erroneous. By it, the district was not required to take any action to vacate the sale, and restore the money and the notes, unless it had received them.

If the district knew that the sale had been made on credit, and that the money and notes were in the hands of its own agents, it should have called upon its agents for them, and offered to restore them. The agents held them for the district; and their possession of them, was, in law, the possession of their principal. The case shows that Lawrence, who held the money and notes, was district agent, as well as one of the committee. But the proceeds of the sale were rightfully in the hands of the committee. Were not the committee the legally constituted agents to make the sale? And are not agents authorized to sell, authorized to receive payment? Do not the proceeds of sale, on payment to the agent, become at once the property of the principal, so that he can immediately claim the possession and control of them?

With respect to the sale without authority, and rescinding it without a return of the money and notes, it is admitted, this could not be done, if the principal was informed of the acts of its agents.

Notice of acts of agents may be presumed; and if not disap-

proved within a reasonable time, a ratification arises. *Johnson v. Wingate*, 29 Maine, 404. Ratification may be presumed from acts or from omissions. 26 Wend., 190. From the facts that a sale of the house had been made; that possession had changed from the sellers to the purchasers; that they had removed it to another lot of land; had continued openly in possession more than seven months; and that the plaintiffs had commenced an action to recover for its value, a jury would be fully authorized to find that the plaintiffs had a knowledge of the acts of their agents. All these transactions were open and notorious. No voter of the district could have been ignorant of them.

The advertisements for bids, posted in three public places in the district, contained the terms of sale, "ten per cent. down, the balance in one year, with interest and good security."

"A principal who does not promptly disavow the unauthorized act of his agent, makes the agent's act his own," is a very familiar rule of law. The district records, which make part of the case, show no complaint that the sale was on credit, or for any cause, either at the meeting in September or in October, 1860.

No complaint that credit was given was made at the former hearing of the case. 54 Maine, 505. It was sought to avoid the sale for very different reasons. Now, after the lapse of more than eight years, this is made for the first time a point of contention, in a suit not between the parties to the sale, to determine the validity of it, but in a suit against an insurance company, from which all these facts were concealed when the policy was renewed.

It does not appear that these facts were made known to the district as a corporate body in legal meeting. But is not a corporation to be held responsible for what is known to all its members, though not stated in a legal meeting? If such is to be the rule, when corporations are so numerous, they will be greatly favored at the expense of the community. Such is not the rule in relation to corporations acting as common carriers, nor to railroads. Cities and towns are held to have a knowledge of what is known to a few of their taxable inhabitants. School districts should be held as

knowing what is well known to its members, so far as regards the acts of its agents, respecting their dealings with other persons. The safety of the community requires it.

*Gould & Moore*, for the plaintiffs.

The only question is that of insurable interest. The instruc· tions given were too favorable to the excepting party. Fraud rendered the sale void, not voidable; and three juries have specially found the transaction between the committee and the pretended purchasers fraudulent. Story on Agency, § 211 ; Sugden on Vendors, 392 ; *Copeland v. Ins. Co.*, 198 and 204 ; *Church v. Maine Ins. Co.*, 1 Mason, (Cir. Ct. R.,) 341, 344, 345.

The sale upon credit was void. It was not merely good till repudiated ; it had no effect unless, nor until, ratified. *Johnson v. Wingate*, 29 Maine, 407, and cases there cited ; *Delafield v. Illinois*, 26 Wend., 193, 223 ; *Bank v. Cartwright*, 22 Wend., 348 ; *Ives v. Davenport*, 3 Hill, 374, 377 ; *Parsons v. Webb*, 8 Maine, 38 ; *Cowan v. Adams*, 10 Maine, 374 ; *Corning v. Strong*, 1 Carter (Ind.,) 329 ; *Kirk v. Hiatt*, 2 Carter, 322; *Upton v. Suffolk Co. Mills*, 11 Cush., 586, 589.

There was no notice of the action of· the committee to the district ; no report was ever made to it. No knowledge possessed by any number of individuals could affect the district as such. The district could only ratify at a meeting held upon a warrant containing an article to see if they would ratify. *Chamberlain v. Dover*, 13 Maine, 466.

The district, never having received the money, could not return it ; nor would they be held so to do, in any event, since the sale was void. *Peters v. Ballistier*, 3 Pick., 504 ; *Snow v. Perry*, 9 Pick., 542 ; Hilliard on Sales, (1st ed.) 55 ; *Munn v. Commonwealth Co.*, 15 Johns., 44, 54 ; *De Bouchout v. Goldsmidt*, 5 Vesey, jr., 211 ; *Van Amringe v. Peabody*, 1 Mason, C. C., 440. No usage to sell school-houses on credit can be reasonably pretended to exist. The defendants first introduced the town clerk and records, to show a division of the district, and that the No. 6

prosecuting this action, was not the No. 6 that owned the house, when the policy issued. Then we introduced the protest. At most, this was merely immaterial, and so the verdict should not be set aside on account of its admission. *Polleys v. Ocean Ins. Co.*, 14 Maine, 152; *Watson v. Lisbon Bridge*, Id., 204; *Page v. Homans*, Id., 478; *Merriam v. Mitchell*, 13 Maine, 439.

PETERS, J.   The fact that the sale of the school-house in question was, in most part, upon credit instead of for cash, as the vote of the district imported it should have been, settles this controversy for the plaintiffs.   This phase of the case does not appear to have been presented in any of the bills of exceptions or motions considered by the court before.

The authority was by recorded vote easily to be seen and understood by those concerned.   It is needless to cite cases to establish the general principle that a specific authority or direction to sell, does not authorize a sale on credit; unless, at the place of sale, there is an usage of business, general or special, in reference to which an authority to sell upon credit is supposed to be given.   It is suggested in argument that this doctrine may be inapplicable to persons, acting as agents for *quasi* corporations, like towns and school districts, and that they might be regarded from convenience and necessity, as clothed with executive and prudential power, superior to that of agents of ordinary business corporations or persons.   We find nothing in the authorities, and see no reason upon principle, in support of such a modification of the general rule.   If there is any distinction, it would seem that the acts of public agents, acting in pursuance of a special authority are to be construed perhaps more strictly than the acts of agents of private persons, upon the ground that public agents are less within the immediate supervision and control of their principals. *State of Illinois v. Delafield*, 8 Paige, 527; S. C. 26 Wend., 192.   *Cushing v. Longfellow*, 26 Maine, 306.

The jury by a special verdict, find that the sale was made upon one year's credit, except ten per cent cash; that the proceeds of

the sale never came into the possession of the district, nor were used by them; and that the district never ratified the sale. These findings are supported by the evidence.

The district would not be bound by the sale made without authority, unless in some way by them ratified. The ratification must be by the principal, and not by the agent of his own acts. The retention of the money and notes by the committee, unless consented to by the district, would be no more evidence of an authorized contract, than their taking the same originally would be. The ratification must be proved. It is not in this respect like a contract obtained by fraud which stands till rescinded; but a contract made by an agent without authority is no contract unless shown to be ratified, though such ratification may, under a variety of circumstances, be presumed. A presumption from the nonaction of a corporation like a school district, would be less readily inferrible than in the case of individuals who can more readily act. A district can be bound only by some recorded vote, or some act, or an acquiescence upon their part as a corporation, equivalent thereto. The unofficial conduct of individuals in the district has no controlling effect. As bearing upon these general propositions see *Chamberlain v. Dover*, 13 Maine, 474; *Davis v. School District in Bradford*, 24 Maine, 349; *White v. Sanders*, 32 Maine, 188; *Fisher v. School District in Attleborough*, 4 Cush., 494; *Bliss v. Clark*, 16 Gray, 60.

In this case the sale was not warranted by any vote. All parties are presumed to have known it. The proceeds of the sale have remained in the hands of the committee from that day to this. The district have neither had nor used them, directly or indirectly. They were neither deposited with the officers of the district who dispense its funds and credit, nor with the town treasurer where the money of the district should be kept. The committee never informed their principals of their action in any official communication or form whatever. Beyond all this, there is plenary evidence to inspire the belief that the committee, with the full knowledge of the vendees, were executing the trust committed to

them, in some respects at least, unfaithfully. The rule that where a principal has full knowledge of the acts of his agents, he must dissent, and give notice of his dissent within a reasonable time, is stringent in its application only where the agent and those dealing with him are acting in good-faith, and the principal receives a direct benefit therefrom. Here no benefit whatever but, on the other hand, an injury would have accrued from the action of the committee, if about four hundred dollars were to be received for a property, admitted in the report of the case to have been worth several times that sum. All the subsequent corporate action of the district, so far as any appears, shows that the sale was repudiated. An insurance on the building was renewed. Attempts were made to hold district meetings in the house. An effort was undertaken to have the building put back to the place from which the purchasers removed it. The persons claiming to own the building were prosecuted by a vote of the district as trespassers, (although the suit was subsequently withdrawn) a significant evidence of disaffirmance of the contract attempted to be made. Upon all this evidence the finding of the jury upon this point must be deemed to be a correct one; and the rulings and refusals to rule upon the questions involved in such finding were sufficiently favorable to the party excepting. All other questions, therefore, but the admission of an item of testimony objected to, become unnecessary to be considered.

It seems a paper got into the case, against the objection of the defendants, containing a protest of a majority of the voters against an attempted division of the district, which would have relevancy only upon a question whether the district number six who were insured, were identical with the plaintiffs who bring this suit. If such a question was broached, evidently it was not pursued. No reference to the question is made in the judge's charge as reported. So that this piece of evidence would be immaterial. But the defendants contend, that, for that reason, it had a tendency to confuse and prejudice the jury. While, if anywhere, it might have a breath of weight upon the question of fraud that was specially sub-

mitted to the jury, it is not perceived how it could in the slightest degree weigh with the jury upon the only issue which, in our view of the case, has become material. The verdict should not therefore be disturbed.

*Motion and exceptions overruled.*

APPLETON, C. J., CUTTING, DICKERSON, VIRGIN, JJ., concurred. DANFORTH, J., having been of counsel, did not sit.