## Barriger v. Bryan, et al.

(Decided June 3, 1921.)

### Appeal from Simpson Circuit Court.

1. Principal and Agent—Contract to Sell Land—Terms.—A mere contract to sell implies a sale for cash, and in the absence of special authority an agent must sell for cash only, he cannot sell on credit

2. Principal and Agent—Authority to Sell Land—Customs and Usages.—An authority or direction to sell real estate does not carry with it the right to sell on credit, unless there is proof of an established usage of trade or business that the agent is vested with authority to sell on credit.

3. Principal and Agent—Sale of Land by Agent—Ratification.—In the absence of an acceptance by the principal of cash given in part payment of the purchase price on the sale of real estate by an agent or of any other act on the principal's part from which a ratification might be inferred, he is not bound by any act of the agent, by the terms of which the latter undertakes to sell property upon terms different from those authorized.

RODMAN GRUBBS, GRUBBS & GRUBBS, WM. MARSHALL BULLITT and G. T. & L. B. FINN for appellant.

JOHN B. RODES, SIMS, RODES & SIMS, G. W. ROARK and G. C. HARRIS for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

Appellant owned a farm of 227 acres near the city of Franklin. Being a non-resident of the state he secured the services of a boyhood friend, an attorney, to look after his farm. For a number of years said representative had entire charge of the place, including the renting thereof; the care of the property; the erection of outbuildings; attention to repairs; painting, etc.; in fact he did everything the owner could have done had he been present. As an attorney he represented appellant in certain litigation pertaining to the property and in the purchase of a portion of the farm; he also negotiated a loan with a local bank to take care of the purchase price.

From 1914 to 1917 many letters were written by appellant to his agent in which he impressed upon the latter that the writer's purpose was to get the property in condition for sale. The agent made repeated efforts to dispose of the property and on July 30, 1917, submitted an offer of $60.00 per acre, which included the crops. This offer was declined by appellant in a letter written to his agent on the 13th of the following month. Under the impression he was vested with full authority to contract for the sale of the property at $60.00 per acre the agent on August 11, 1917, entered into a written contract with appellees by the terms of which he undertook to sell the property to appellees for the sum of $60.00 per acre, payable one-third in cash, the balance in equal payments due in one and two years; possession to be given January 1, 1918. Said agent on behalf of appellant further agreed, at the owner's expense, to have the farm divided as appellees might desire. As soon as appellant received notice of the execution of the contract of sale he immediately telegraphed his agent declining to approve the sale and stating that his price for the farm was $100.00 per acre, and he would not accept $60.00. Thereupon the purchasers instituted this suit, seeking the specific performance of the contract and upon trial the prayer of their petition was granted and the commissioner was ordered to execute a deed conveying the land to appellees. This appeal followed.

Appellees contend that Harris, the agent, was authorized to sell the property for $60.00 per acre, and to enter into a binding contract at that price and only in the event he received an offer for a less amount was he required to submit it to his principal for approval. It is the contention of appellant that he never authorized Harris to

sell the land, but merely requested him to find a purchaser and to submit to him for approval any offer he might receive.

Appellant's letters prior to December, 1916, are susceptible of the construction for which appellees contend, viz.: an authorization to Harris to sell the property for $60.00 per acre, but appellant testifies that on the date last above mentioned, while on a visit to Franklin, he had a talk with Harris in which he expressly told him (Harris) that the price for the farm from that date would be $100.00 per acre, though he might consider offers for a less amount. The substance of this conversation as given by appellant finds corroboration in the testimony of two other witnesses.

Harris' admits having had this conference with appellant, but as he understood it appellant merely suggested that they ask $100.00 per acre for the land; he did not understand appellant to withdraw his former price of $60.00. No letters subsequent to December, 1916, throw any light upon the subject. One cannot read the letters and the testimony of the witnesses without the mind being left in doubt as to what was the real understanding between the parties in regard to the disposition of the property. Color is given to the theory of appellant in the fact that in the letter of July 30, 1917, Harris submitted for approval an offer of $60.00 per acre. If, as appellees' contend, Harris had authority to close a deal at that price, he would not have had any reason to submit it to his principal for approval. But we do not find it necessary to decide this question in view of a further point raised by counsel, which is decisive of this appeal.

Granting that appellant had the authority to sell, it is insisted Harris exceeded his authority in the making of said contract. A mere contract to sell implies a sale for cash. The right of an agent to sell on credit, land placed in his charge, depends largely upon his contract of employment. It is a general rule stated by the text-writers and supported by many authorities that in the absence of special authority the agent must sell for cash only; he cannot sell on credit, nor even for part cash and part in time payments. Unless there is proof of an established usage of trade or business to the effect that such an authority vests in the agent the power to sell on credit (and no such custom is shown here) an authority or direction to sell real estate does not carry with it the right to sell

on credit. Where there is no acceptance by the principal of the cash given in part payment, nor of any other act on his part from which a ratification might be inferred, he is not bound by any act of his agent by the terms of which the latter undertakes to sell property, upon terms different from those authorized, such for example as Harris undertook to do in the contract sued on. See C. J. 617; 21 R. C. L. 886; Mechem on Agency, sec. 814; Page on Contracts, sec. 1747; Burks v. Hubbard, 69 Ala. 379; School Dist. v. Aetna Ins. Co., 62 Me. 330; Stengell v. Sergeant, etc., 74 N. J. Eq. 20; Lumpkin v. Wilson, etc., 52 Tenn. (5 Heisk) 555; Horst, etc., v. Lightfoot, etc., 103 Tex. 643. At most Harris had nothing other than a mere authority to sell.

The record does not show any authority vested in him to sell upon terms other than cash, from which it follows that in the execution of the contract relied upon, he exceeded his authority to such an extent that it is not binding on his principal. Nor was he authorized to agree to bear the expense of subdividing the farm. This subdivision was made necessary by a sale to three persons (appellees), each of whom intended to pay a given part of the purchase price, and to receive land in proportion to the amount of their individual investment.

These conclusions in no wise reflect upon the integrity and honesty of Mr. Harris, who seems to have been actuated by none other than the best of motives, the only difference being that from our reading of the record, we are of the opinion he was not authorized to bind appellant by the contract whose specific performance was sought in this suit.

For the reasons given the judgment will be reversed for further proceedings consistent herewith.