## CHARLESTON.

GERLING *v.* AGRICULTURAL INS. CO.

Submitted September 10, 1894.—Decided December 15, 1892.

1. ARREST OF JUDGMENT—PRACTICE.
   A motion in arrest of judgment lies only for some error appearing on the face of the record, which vitiates the proceedings.

2. ARREST OF JUDGMENT—PRACTICE—WAIVER.
   Where a motion in arrest of judgment and a motion for a new trial are made at the same time and are acted upon by the court at the same time, the order, in which they may be considered by the court, is not material; as under such circumstances the mo-

tion in arrest of judgment can not be regarded as a waiver of objection to the verdict or as an admission that the verdict is objectionable.

3. Insurance.

A policy of fire insurance has a clause, which provides, that, unless otherwise provided by agreement indorsed thereon or added thereto, it shall be void if the subject of the insurance, whether real or personal property or any part thereof, be or become incumbered by mortgage, trust-deed, judgment or otherwise. *Held*, judgments recovered *in invitum* against the insured during the life of the policy and before loss are not incumbrances within the meaning of the policy.

4. Insurance.

The policy has a clause which provides, that, unless otherwise provided by agreement, *etc* (as above) it shall be void, if any change other than by the death of the insured take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by judgment, legal process or by the voluntary act of the insured or otherwise. *Held*, a deed of conveyance made by the insured during the policy and before the loss, but invalid by reason of the grantor's mental incompetency to make such deed, was not such a change or transfer of title as would forfeit the policy.

5. Insurance.

If an insurance company refuses to pay the loss or deny its liability upon independent grounds, before any proofs of loss are made, and before the expiration of the time within which such proofs are by the terms of the policy to be made, such denial and refusal constitute a waiver of the condition of the policy requiring such proofs.

Flick & Westenhaver and Faulkner & Walker for plaintiff in error :

I.— *The court having overruled the motion in arrest of judgment could not go back for the motion for a new trial, but should have proceeded to judgment on the verdict.*—1 Barr. 333 ; 2 Salk. 647 ; 1 Barn. & Cres. 160 ; 2 Tuck. Comm. 309 ; 16 Am. & Eng. Ency. L. 635 ; 41 Mo. 264.

II.— *Court erred in construing policy forfeited by recovery of judgments.*—12 W. Va. 130 ; May Ins. 166, 174, 175, 181 ; 18 Am. Rep. 385 ; 80 N. Y. 21 ; 82 N. Y. 519.

III.— *Deed made by a person mentally incompetent will not forfeit policy.*—2 Bar. L. Pr. 727, 730, 731 ; 35 W. Va. 492 ; 32 W. Va. 487 ; 35 W. Va. 666 ; 38 W. Va. 525 ; Hill. New Tr. 448 ; 33 W. Va. 324 ; 15 Wall. 9 ; 2 Min. Ins.

572; 30 Am. St. Rep. 313; 28 Am. Dec. 154; 62 Me.
330; 65 N. Y. 6; 9 Am. St. 607; 13 Gray. 431; 28
Gratt. 88; 12 Wall. 436; 120 U. S. 527; 4 Am. Rep.
592; 6 Pick. 198; 76 Hun. 475; 32 W. Va. 283.

IV.—*Failure to furnish proof of loss within forty days waived
by acts of insurer.*—33 W. Va. 526.

V.—*Mental capacity as applied to evidence.*—Schoul. Wills
§ 71; 25 N. Y. 9; 19 S. E. Rep. 314; 6 Coke 23; 1
Cox Ch'y 333; 2 Hagg, Ecc. 122.

H. H. EMMERT for defendant in error:

I.— *Violation of condition against incumbrance by judgments
against insured avoided policy.*—Black L. Dict. 613 (En-
cumbrance); Bouv. L. Dict. "Encumbrance"; 40 Md.
640; 12 Ins. L. Jour. 874; 36 Wis. 599; 103 Pa. 282;
122 Pa. 128; 119 Pa. 449; 51 Wis. 293; 71 Ia. 119; 86
Pa. 227; 32 Am. Dec. 70; 63 Pa. St. 320; 50 Md. 214;
11 Am. Rep. 137; 1 Black 205; Free. Judgm'ts § 123.

II.—*Alienation of property insured rendered policy void.*—16
Pet. 502; 7 7 U. S. 33; 17 N. Y. 151; 5 N. Y. 151; 2 N.
Y. 210; 28 Am. Rep. 58; 21 W. Va. 368; 6 Metc. 415;
1 Gray 437; 1 Blackst. 291; 15 Am. Dec. 364; Id. 354;
1 Sto. Eq. Jur. § 222–228; 6 L. C. P. U. S. Sup. C't
Rep. 428; 5 Laws. R. R. & P. § 3985; Bish Con. 975;
17 Am. Rep. 688; 75 Md. 581.

III.—*Failure to furnish proof of loss within time required ren-
dered policy void.*—33 W. Va. 256; 75 Wis. 198.

HOLT, JUDGE:

This was a suit on a fire insurance policy brought in the
Circuit Court of Berkeley county, in which the jury on the
21st day of April, 1894, found for the plaintiff on the issues
joined and assessed his damages at one thousand six hun-
dred and sixty five dollars; but the court on motion of de-
fendant set aside the verdict and granted a new trial. To
this action of the court plaintiff obtained this writ of error.

It was an action of *assumpsit* for two thousand dollars the
declaration being in the brief form set out in section 61, c.
125, Code; and the plaintiff was required to file a more
particular statement of the nature of his claim and of the

facts he expected to prove at the trial, which was done, as follows:

"Defendant wrote the policy after examination of the property and with full knowledge of the title; the premium was paid and the policy delivered to run for three years; the house was burned without fault of the insured, being a total loss with damage to plaintiff of one thousand and five hundred dollars at least." On motion of plaintiff defendant was required to file with its plea a more particular statement of the nature of its defence or of the facts expected to be proved at the trial. Thereupon defendant filed the plea, that it was not liable to plaintiff as in said declaration was alleged, and these defences:

"(1) There was a provision in the policy against the property being or becoming incumbered by mortgage, deed of trust, judgment, or otherwise, and the defendant set forth a number of judgments recovered against Elizabeth A. Etchinson after the issuance of the policy, and before the loss, whereby the policy became forfeited and void.

"(2) There was a provision that the policy, without agreement indorsed, should be void, if any change, other than by death, took place in the interest, title, or possession of the property insured, whether by legal process or judgment, by voluntary act of insured or otherwise; and defendant set forth a deed bearing date on the 3d day of December, 1891, by which Mrs. Etchinson conveyed the property to Bessie E. Wood and others, her grandchildren, by reason whereof the policy became forfeited and void before the loss.

"(3) That the written proofs of loss required by the provisions of the policy were not furnished within forty days, as required, after the fire, nor at any time.

"The plaintiff joined issue on the general plea, and also on the three special statements of defence and also filed in writing three several matters as in waiver and estoppel, on which he intended to rely: (1) That the judgments specified were not by confession, nor suffered by the procurement or connivance of plaintiff's intestate, but were recovered by due process of law against her *in invitum*, and while she was of unsound mind and memory, and therefore were not in avoidance of the policy. (2) That the

deed to Bessie E. Wood and others was not a valid deed, because at the time it was made the grantor, Elizabeth A. Etchinson, was of unsound mind, which continued until after the loss, and therefore did not work a forfeiture of the policy. (3) That defendant had waived the proof of loss by having its adjuster investigate the loss, and then denying its liability to pay; all within the forty days after the fire. And on these three special replications defendant took issue.

"At the April term, 1894, a trial was had upon these issues, and the jury was directed to make a finding in writing in answer to the following particular question of fact stated in writing, and submitted to them, 'Was Mrs. E. A. Etchinson, on the 3d day of December, 1891, when she is alleged to have executed the deed in question mentally incompetent to make the deed?' The jury returned the answer, 'Yes,' together with a verdict for the plaintiff on the issues joined, and assessing his damages at one thousand six hundred and sixty five dollars.

"Thereupon the defendant moved the court in arrest of judgment to set aside the verdict and grant it a new trial; and the court having considered it overruled the motion in arrest of judgment but sustained the motion for a new trial and set aside the verdict and granted a new trial. To this ruling setting aside the verdict and granting a new trial plaintiff took his bill of exceptions No. 6, in which the court certified all the evidence in the case touching that question, as required by section 9, c. 131, Code. And this ruling of the court is assigned here as error, under clause 9, s. 1, c. 135, Code, which allows the writ of error to an order granting new trial."

The grounds of error are as follows :

1. The court having first overruled the motion in arrest of judgment, could not then go back to the motion for a new trial, but should have proceeded to judgment on the verdict   For this *Sims* v. *Alderson* (1836) 8 Leigh 479, is cited, where it is said : "It is well settled that a party can not move for a new trial after a motion in arrest (4 Barn. & C. 160) ; but the inference is that if the motions are simultaneous, and disposed of at the same time, in one judgment,

no matter in what order, then the rule does not apply ; as under such circumstances the motion in arrest of judgment can not be regarded as an admission that the verdict is unobjectionable, and the motions being made together, they are disposed of in one judgment. If the motion in arrest had been made and overruled, and then the motion made for a new trial, it might be said that the motion came too late ; for the only action the court could then take would be to render judgment on the verdict." It will be noticed that in the case of *Sweeney* v. *Baker*, 13 W. Va. 158, 216, the two motions were made together, in the same order as in this case, and both were acted on at the same time, and both were overruled, which was there held not to be improper. The motion in arrest of judgment is quite common in our practice ; resorted to out of abundant caution, as there may be some serious defect appearing on the face of the record not cured by our statute of jeofails. Sections 9, 15, 29, c. 125 ; section 8, c. 131 ; chapter 135 ; 4 Minor, inst. p't 1, p. 848 *et seq.*, where the subject is discussed and the cases are considered.

2. The court erred in holding the policy of insurance to be forfeited by the recovery of judgments which became liens and incumbrances on the property insured. From the evidence admitted, and the instructions given and refused, the verdict of the jury was against the instruction of the court on this point, on which I infer from the arguments here, the case mainly turned in the Circuit Court. The record shows that five or more judgments were rendered against the insured after the date of the policy, and before the fire, without the knowledge and consent of the insurance company. In that event, the jury was instructed by the court to find for the defendant. It also appeared that they were rendered against her *in invitum*, by due process of law. This provision of the policy reads as follows : "This policy (unless otherwise provided by agreement indorsed thereon or added thereto) shall be void if the subject of this insurance, whether real or personal property or any part thereof, be or become incumbered by a mortgage, deed of trust, judgment or otherwise."

By the defendant it is contended that the fact that these

judgments were rendered *in invitum* makes no difference; that the provision itself by expressly giving the exception and qualification excludes these judgments, no matter how rendered, because not embraced in the exception. The reason for the provision is obvious. Property might be thus incumbered until it would cease to have any value to the insured, except what might result from its destruction by fire. But the answer to this is that the clause, "unless otherwise provided by agreement," refers to mortgages, deeds of trust, judgments confessed and other voluntary incumbrances and requires, to give it a sensible application, that it should be construed as if it read, "If * * * it be or become incumbered (by the insured) by judgment," *etc.* And in case of judgment *in invitum*, mechanics' liens, foreign attachments, tax-liens, *etc.*, the insured could not obtain such consent or agreement in advance; hence it must mean an incumbrance by voluntary act—that is, when he shall incumber the property, or when the property shall be or become incumbered by him by deed of trust, which is voluntary, or judgment confessed in person or by attorney, or by any other voluntary act.

Section 1, c. 31, reads as follows: "There shall be a lien on all real estate for the taxes assessed thereon from the day fixed by law for the commencement of the assessment of such taxes in each year" (1st day of April). See section 39, c. 29.

Section 2, c. 75, says: "Every mechanic, builder, *etc.*, who shall perform work, *etc.*, shall have a lien upon such house, *etc.*" The insurer may be a non-resident of this state, where the house insured is situated, and being proceeded against by foreign attachment and order of publication an order of attachment is sued out at the time of the institution of the suit and levied on his house.

Section 9, c. 106, says that the plaintiff shall have a lien * * * on the real estate indorsed on the order of attachment from the suing out of the same. The insured may be sued for what he does not owe, yet on defence a judgment may be obtained against him. These examples tend to show how unreasonable such a construction of the policy would be, by the absurdities to which it would lead. The

conclusion must be that the language of the condition in question, fairly interpreted, does not extend to incumbrances created by law ; and so it was held in *Baley* v. *Insurance Co.* (1880) 80 N. Y. 21 ; *Green* v. *Insurance Co.*, 82 N. Y. 517 ; *Richardson* v. *Insurance Co.*, 16 U. C. C. P. 430.

The general clause against the creation of incumbrances has often been held to refer to voluntary incumbrances not to include judgments *in invitum* or a mechanic's lien. 1 Biddle, Ins. § 226. Incumbrances without the consent of the company do not include those liens and claims—such for instance as judgment-liens—which are enforceable against the will of the insured, but only such as may be created by his consent and on application to the company for its consent. *Steen* v. *Insurance Co.*, 61 How. Pr. 144, 148. See *Insurance Co.* v. *Pickel* (Ind.; 1889, 21 N. E. Rep. 546) ; 1 May, Ins. §§ 292, 292a. For clause in standard New York policy against increase of risk, see Richards' Ins. §§ 141, 147, "or if the hazard be increased by any means within the control or knowledge of the insured."

I do not think the cases cited by the counsel for defendant support the contention, that the policy is to be construed as comprehending judgments *in invitum*. *Seybert* v. *Insurance Co.* (1883) 103 Pa. St. 282, dealt with a policy which provided : "If after insurance the risk shall be increased by any means whatsoever, or if the property shall be incumbered by judgment, mortgage or otherwise, * * * and the assured shall neglect or fail to give written notice thereof, and pay such additional premium as the company shall determine, and obtain written consent of the company to the continuance of the policy, such insurance shall be void and of no effect." No notice was given of a judgment confessed. The court held there was a judgment and lien, within the meaning of the policy, and the condition was broken by the failure to give notice. This case does not apply, for here there is no question of notice involved.

In *Hench* v. *Insurance Co.* (1888) 122 Pa. St. 128 (15 Atl. 671) notes were given containing warrants of attorney to enter judgment. The payee accepted them fully satisfied with the personal security given and informed the plaintiff,

that he would not enter judgment on the notes. But afterwards during the life of the policy but without plaintiff's knowledge or any intimation to him the creditor caused judgment to be entered on both notes, which judgments were liens on plaintiff's farm. This, I take it, was tantamount to a confession of judgment. It was a case of increase to premium for increased risk provided for in the policy. Here it was a voluntary incumbrance. So, also, in *Insurance Co.* v. *Schmidt*, 119 Pa. St. 449 (13 Atl. 317) the incumbrance was voluntary, and the notice required was not given.

In the case of *Bank* v. *Yerkes*, 86 Pa. St. 227, the "incumbrance fell" upon the property insured by judgment confessed, reducing the real interest of the insured in the same to a sum equal to or below the amount insured, and the policy was held to be thereby made void. *Redmon* v. *Insurance Co.*, 51 Wis. 293 (8 N. W. Rep. 226) held that a subsisting mechanic's lien was an incumbrance within the meaning of a warranty against incumbrances, as of the time when the fire policy of insurance was taken.

In *Hicks* v. *Insurance Co.* (1887) 71 Iowa 119 (32 N. W. Rep. 201) there was a voluntary incumbrance by mortgage and apparently an involuntary one by judgment rendered *in invitum*. It arose as a question of pleading. For further discussion of the subject, see *Russell* v. *Insurance Co.* (Iowa 1889) 4 L. R. A. 538 notes (42 N. W. Rep. 654); *Walradt* v. *Insurance Co.* (N. Y. App.; 1893) 7 Am. Ry. & Corp. Rep. 444, and notes (32 N. E. Rep. 1063); *Lane* v. *Insurance Co.* (1835) 12 Me. 44 (28 Am. Dec. 150, notes).

3. Plaintiff contends that the deed made by the insured E. A. Etchinson to Bessie E. Wood and others, on December 3, 1891, and therefore during the life of the policy, did not have the effect to make void the policy as provided in the condition against alienation, because it is shown by the evidence, and specially found by the jury, that she was at the time mentally incompetent to make a deed. The discussion of this question by counsel for defendant is made to turn on the point, is a deed thus made void or only voidable? So far as this question of mental incapacity affects the judgments already considered, the law seems

to be settled that judgments against persons lunatic and persons of unsound mind are neither void nor voidable. *Allison* v. *Taylor*, 6 Dana, 87 (32 Am. Dec. 68, note, and cases). If an attempt were made to vacate or enjoin such judgment in chancery, doubtless the mere insanity of the judgment defendant would not be a guaranty of success. It would require the aid of other facts, from which the conclusion must follow that the judgment is inequitable and can not be executed without injustice. Plaintiff's counsel, however, contends that the true rule in this case is, that the transfer or conveyance must be an act valid as between the parties to the deed, in order to work a forfeiture of the policy under the conditional provision against alienation.

For alienation clause in New York standard fire policy, see Richards, Ins. § 147. In *Assurance Co.* v. *Scammon* (1888) 126 Ill. 355 (18 N. E. Rep. 562) it was held that a voidable sale, afterwards set aside, did not avoid the policy; that conditions in policies of insurance against alienation must be construed strictly, the court having in view the object of the insurance company in inserting them; that is, when there has been such an alienation as that all interest or liability on the part of the assured has ceased or been changed, so that the insured shall have greater temptation or motive to burn the property, or less interest or watchfulness in guarding and protecting it from destruction by fire, the reason for the condition against alienation exists, and the forfeiture provided for in that event takes place, and renders the contract void; in other words, these conditions are inserted to guard against the moral hazard involved.

In *Orrell* v. *Insurance Co.* (1859) 13 Gray, 431, it is said, as applicable to the facts of that case, that, to constitute a breach of the condition of insurance relative to a conveyance of the property, there must have been an actual sale or transfer of property, valid as between the parties; and in *Insurance Co.* v. *Kinnier*, 28 Gratt. 88, 105, it is said by Judge Burke, quoting from May, Ins. 182: "No rule in the interpretation of a policy is more fully established, or more imperative and controlling, than that which de-

clares that in all cases it must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity his claim to indemnity, which it was his object to secure in making the insurance."

So it seems that contracts of insurance can hardly be so drawn as to escape the application, to some limited extent, of the same principles as to forfeiture that are applied in courts of equity, not only because it is of long standing, but also because it is inherent in the nature of the subject. As to forfeiture clause to secure a collateral object, see *Klein* v. *Insurance Co.*, 104 U. S. 88, 90. But they should be fairly construed as contracts of indemnity against loss on certain terms and conditions, according to the equitable rules of construction applicable to such instruments—that is, to look at the intent rather than at the form ; that this clause of forfeiture relates to a collateral object, and was intended to apply in order to prevent increase of hazard, by a separation of the interest in the policy from the interest in the property, and to prevent taking away or diminishing the care of the one with whom the contract was made ; and the mere letter of such contract, in total disregard of the reasons for its various clauses, would soon lead to palpable injustice. See *Moffitt* v. *Insurance Co.* (Ind. App.; 1894) 38 N. E. Rep. 835.

In the case of *Insurance Co.* v. *Boykin* (1870) 12 Wall. 433, insanity was held to be sufficient excuse for failure to comply with the condition of the policy requiring an affidavit of the true amount and circumstances of the loss. "If he was so insane as to be incapable of making an intelligent statement, this would, of itself, excuse the condition of the policy."

In *Insurance Co.* v. *Crandal*, 120 U. S. 527 (7 Sup. Ct. 685) it was held that a condition avoiding the life-policy, where the insured shall die by suicide or self-inflicted injuries, does not include self-killing by an insane person, because it is not his act, in the legal sense.

In *Autremont* v. *Association* (1892) 65 Hun 475 (20 N. Y. Supp. 344) the insured took a policy on buildings owned by him, and subsequently becoming insane, set fire to the buildings while he was in that condition and perished in

the flames. Held, his executors were entitled to recover; for, being insane, the insured was incapable of forming a fraudulent design to destroy his own property, with the view of defrauding the insurer.

From these cases it would .seem that the insured, Mrs. Etchinson, could not be regarded as having done anything to increase the hazard, or take away the personal confidence reposed in her by a deed made when she was mentally incompetent to make it, whether it be regarded as void or only voidable. See, also, *School Dist. No. 6.* v. *Aetna Ins. Co.*, 62 Me. 330, 339 ; *Orrell* v. *Insurance Co.*, 13 Gray, 431, 434. See, also, 1 May, Ins. (3d Ed.) Append. p. 552, where a large number of cases on alienation are brought together and conveniently classified within a small compass.

In *Richardson* v. *Insurance Co.* (Ky.) 13 S. W. Rep. 1, the policy was to become void if any change whatever should take place in the title of the property. Death of course caused such change of title, put an end to the personal features of the contract and thereby may have increased the hazard ; but it was held ¦that such change of ownership did not make void the policy.

So, also, in *Pfister* v. *Gerwig*, 122 Ind. 567 (22 N. E. Rep. 1041) it was held that such transfer of ownership by operation of law, upon the death of the assured, did not avoid the policy, because the inhibition in the policy and by-laws did not cover such a transfer. See *Thompson* v. *Insurance Co.* 136 U. S. 287 (10 Sup. Ct. 1019). In *Sheppard* v. *Insurance Co.*, 21 W. Va. 368, it is held that a policy of insurance against fire is a contract of indemnity, and the assured must have an insurable interest in the property when it is insured and when the loss by fire occurs. The doctrine in this country seems, by weight of authority, to prevail that the deed of an insane person is voidable only, and not void ; that is, it may be confirmed. See *Allis* v. *Billings* (1843) 6 Metc. (Mass.) 415 (39 Am. Dec. 744, notes); *Arnold* v. *Iron Works*, 1 Gray 434 ; *In re Desilver* (1835) 5 Rawle 113 ; 2 Bl. Comm. (by Hammond) 291 ; *Jackson* v. *King* (1825) 4 Cow. 207 (15 Am. Dec. 354, notes) ; Bish. Cont. § 975 ; *Riley* v. *Carter*, 76 Md. 581 (25 Alt. 667) ; Ewall, Lead. Cas. 576, 588, notes to *Burke* v. *Allen*, 29 N. H. 106.

I do not regard as here involved the strict technical distinction in practice so hard to draw between a contract void and one voidable only. We may say that the one is a mere nullity, void as against law, void for want of power, incapable of confirmation, of no effect whatever, of which any stranger may take advantage (see And. Law. Dict.); while the other is capable of confirmation, may be good for some purpose, may be good for some person, good against some, valid as long as not formally set aside, or valid as long as not in some way repudiated or disowned—according to the different circumstances under which they may be regarded (see *Ex parte Lange* 18 Wall. 163, 174, as to judgments).

In this case, when the loss occurred, the insured had such interest as the conceded right to have the deed set aside as invalid gave her. There was, so to say, a right outstanding in her to avoid it. Whether the deed be regarded, in the ordinary sense, as void or voidable, she still had the insurable interest resulting from the inability of not having mind and rational will enough to make it; and therefore it was made without her fault; and, not being her rational, voluntary act, it worked no forfeiture of this policy, within the sound, just, and equitable construction given it by the courts, according to the long and well-settled doctrine applicable to such cases. It does not fall within the clause of forfeiture, because it is not within the reason, according to the true intent and meaning of the parties. Having paid in advance the full contract price for this indemnity, when the loss comes the insurer can not, in equity and good conscience, withdraw from his part of the contract on account of an innocent invalid act. And it is not sufficient to say, as has been so often said before: "Such is the letter of the contract. It may be hard, but we, too, are without blame. It is her misfortune, and should not be our loss; for such contingencies were contemplated. It was a part of her hazard, and influenced our price. To hold otherwise is to impair the obligation of her contract." But, in such cases of forfeiture, the courts, without claiming or exercising any power of dispensation over any rule of law, or the power to relax the obligation of the contract, give it an equitable, fair, and rational construction, in view of the nature of the

act done, the character of the contract made, and the mischief intended to be guarded against by the clauses of forfeiture, on a matter not essential, but collateral; for although freedom of contract has kept pace with the growth of individual freedom, neither has ever outgrown subjection to law.

The courts sometimes are disposed to show impatience with the carelessness with which the insured inconsiderately enter into contracts so important, and to hold them to the strict letter. Again, they may show some impatience with the multitude of conditions, exceptions, limitations, and restrictions which they generally contain, and are disposed to construe them quite liberally in favor of the insured, as contracts framed by the insurer too much for his own benefit, and accepted by the insured without examination, and with no comprehension of their full import. But in all cases the aim should be, and for the most part is, to construe them fairly, according to the rules and principles applicable to such instruments; that is, to look at the main object the forfeiture prescribed for is intended to accomplish—go by the reasonable meaning, rather than by the literal form, so as to give it such effect as, according to its purpose and terms, in equity and good conscience it ought to have. The conditions of forfeiture are not to be disregarded; for the principal ones, such as are found in this case, have received the sanction of long and wide experience as being reasonable and well founded, and not to be dispensed with; for being a contract whereby one, for a consideration, undertakes to compensate another if he shall suffer loss by fire, where danger is apprehended or protection required it promises indemnity, but takes care to refuse and guard against the insured making his loss a source of profit. It is therefore strictly a contract of hazard and indemnity, personal to the insurer, for an agreed price set against an honest loss, and upon certain terms and conditions, added to the policy in order to secure fair dealing in its making and its execution—to its exclusion as a source of profit, and of all temptation to make it so. Hence, among others, the conditions against alienation, incumbrances, and the like. The personal care contracted

for must be maintained, and interest in the policy should not be separated from interest in the property; and so common and so important have such contracts come to be that they have become a matter of great legislative concern, and are in many states regulated, even as to form (and this was needed) by statute. See Richards on Insurance, from page 133 to page 197, as to statutes governing the contract. See Append. p. 569.

4. Plaintiff claims that the failure to furnish proof of loss within the 40 days required by the terms of the policy was waived by the acts of the insurer. On this point the evidence introduced was all on the side of the plaintiff. As soon as the loss occurred the local agent was notified, who at once sent notice to the general agent of the company for that territory, with power to make contracts of insurance, appoint agents; all premiums are remitted to him; he adjusts and pays all losses; he was manager of the company's business for that section; and his name appears on the back of the policy sued on. Within ten days after the fire he came; offered two hundred and fifty dollars as a compromise to save litigation. When that was refused, he objected to giving more, denying the company's liability, on the ground that Mrs. Etchinson had deeded the property away. It was therefore a case in which the defendant refused to pay on the ground stated that it was not liable for the reason given, and is governed by the case of *Sheppard* v. *Insurance Co.*, 21 W. Va. 368; *Deitz* v. *Insurance Co.*, 33 W. Va. Va. 526 (11 S. E. Rep. 50). See *Weiss* v. *Insurance Co.*, 148 Pa. St. 349 (23 Atl. 991); *Insurance Co.* v. *Sheets*, 26 Gratt. 854. Such a denial of responsibility, within the time for making preliminary proofs and before they are made, is the same as a notice to the assured that payment will not be made in any event. It is therefore a waiver of the condition of the policy requiring such proofs to be made, as the law does not require the insured to do an act, which the insurer has rendered unnecessary; for the refusal to pay was express and was put upon a ground which dispensed with the making and presentation of the preliminary proof of loss, which was required for the purpose of making or refusing payment.

In *Knudson* v. *Insurance Co.*, 75 Wis. 198 (43 N. W. Rep. 954) there was no denial by the general agent of the insurance company's liability on the policy, or anything said inconsistent with the theory that, if the matter was not then settled, the general agent would expect the plaintiff to make such proofs as are required by the policy. On waiver and estoppel, see *Wyman* v. *Insurance Co.*, 119 N. Y. 274 (23 N. E. Rep. 907); *Messelback* v. *Norman*, 122 N. Y. 578 (26 N. E. Rep. 34). See Richards, Ins. §§ 80, 81. As to authority of agent to waive, see *Id.* § 170.

There was no controversy about the facts; the only questions were those of law: (1) Was the policy made void by the judgments rendered *in invitum* against the insured? (2) Was the deed being invalid and voidable by reason of the mental incompetence of the grantor such an alienation as to make void the policy? As we have already seen, both these questions must be answered in the negative; and therefore judgment should have been rendered for plaintiff on the verdict; and the order complained of is therefore set aside, and judgment on the verdict rendered.