# CHARLESTON.

IAGER HARMAN *et al. v.* G. W. HARMAN *et al.*

Submitted February 7, 1922.   Decided February 14, 1922

1. INSANE PERSONS—*Bill by Prospective Heirs of Insane Person to set Aside Deed Will Not Lie.*

   As a general rule children or prospective heirs of one adjudged insane, but still living, have no right or interest in the lunatic's estate which they are entitled to have vindicated in a court of equity, nor to set aside a deed made by him before or after inquisition of lunacy, on grounds of fraud, or other grounds, not amounting to a fraud upon them, and a bill by them for that purpose should be held bad on demurrer. (p. 305).

2. SAME—*Prospective Heirs' Bill to Set Aside Conveyance Cannot be Maintained as One to Remove the Committee.*

   Nor can such a bill by such prospective heirs be maintained as one to remove the committee of an insane person appointed by the county court, the court in which his appointment was made and where the committee qualified having sole jurisdiction in the premises.   (p. 306).

Certified Questions from Circuit Court, Summers County.

Bill by Iager Harman and others against G. W. Harman and others.   Certified on the question whether circuit court rightfully overruled defendant's demurrer to the bill.

*Reversed; demurrer sustained.*

*Wm. H. Sawyers* and *James H. Miller,* for plaintiffs.
*Thos. N. Read,* and *R. F. Dunlap,* for defendants.

MILLER, JUDGE:

The question certified is whether the circuit court rightfully overruled defendants' demurrer to the bill.

The plaintiffs are the children by his first wife of G. W. Harman, and defendants are the said G. W. Harman, Margaret L. Harman, his present wife, and certain of her children by him.

The main purpose of the bill is to have canceled and declared null and void two certain deeds dated December 8,

1919, the first purporting to have been made by the said G. W. Harman and Margaret L. Harman to the defendant Daniel H. Harman, Trustee, whereby in consideration of five dollars cash in hand paid, the grantors purported to grant and convey to the said grantee a tract of 1500 acres and another of 400 acres in Summers County, and also a large lot of personal property, consisting of household goods, horses, cattle and farming implements, and certain shares of stock in the New River Hardware Company: Habendum, to have and to hold said real estate and personal property for the purpose of transferring the same to Margaret L. Harman for life, with remainder to the defendants D. H. Harman, Hanna D. Harman, William E. Harman, Geo. W. Harman, Jr., and Dora T. Harman, and as more specifically set forth in the deed from D. H. Harman, Trustee, to the said Margaret L. Harman et als., contemporaneously executed with this deed; and the deed from said trustee is the second of the deeds which the bill seeks to have set aside and annulled. It is alleged that the grantees and beneficiaries of the said last mentioned deed are largely indebted, and that judgments against some of them have been recovered; that said lands and personal property are liable to and will be wasted and sold to satisfy such judgments and debts; that the committee appointed for the said G. W. Harman is controlled and influenced by the said grantees, and though requested by plaintiffs will do nothing to protect the property from waste and dissipation, as it is his duty to do; and that unless the court interferes, and incidental to the other relief sought, removes the said committee and appoints some one who will protect said estate and the interests of plaintiffs therein as prospective heirs or heirs apparent of the said G. W. Harman, the same will be wholly lost to them.

The principal ground for the relief sought is that at the time of the making and execution of said deeds, the said G. W. Harman, then about seventy-five years of age, was irrecoverably insane, and was adjudged insane in December, 1919, and is now confined in the hospital for the insane at Huntington, West Virginia; that plaintiffs were informed and believe that he made no will; and that upon his death his estate,

real and personal, would descend to them and his other lawful heirs.

Assuming the facts which are well pleaded to be as alleged, the controlling question is, can plaintiffs as prospective heirs, during the life of their father and the grantor, maintain this suit against him and the trustee and beneficiaries in said deeds, to vacate and set them aside, or have any relief thereon?

Whether a deed executed by a lunatic before inquisition of insanity is void or only voidable is a question on which there is much conflict. In a recent case we decided that in the absence of fraud and where good faith and ignorance of the beneficiaries of such deed are shown, such deed will be regarded as voidable only. *Morris* v. *Hall*, 89 W. Va. 460, 109 S. E. 493, and cases cited. In *Gerling* v. *Agricultural Insurance Co.*, 39 W. Va. 689, we decided that a deed of conveyance made by the insured during the life of a policy and before loss, but void because of the grantor's mental incapacity to make it, did not constitute such a change or transfer of title as would forfeit the policy. In *Towner* v. *Towner*, 65 W. Va. 476, we held that after one has been adjudged insane, his mental incapacity is presumed in respect to a deed executed by him, and before his discharge from the hospital in which he was confined, although at the time of the execution of the deed he was at home by permission or furlough given him by the hospital authorities. The bill in this case does not make it clear whether the said G. W. Harman was adjudged insane before or after the making of the deeds in question.

But whether the deed of the grantor was made before or after the adjudication of lunacy is a fact not important in the decision of this case. For whether the deed be void or only voidable, the controlling question presented is whether the plaintiffs have any present or prospective rights or interests which they can vindicate by their present bill. They are prospective heirs of their father. But one can not in law be said to be the heir of a living person. An heir has no power over the inheritance during the life of his ancestor. 4 Bacon's Abridgement, 606-7. He may die before his an-

cestor, or the ancestor may be restored to sanity, or have left a will devising the property to another, in either of which events the prospective heir would be and remain a stranger to the estate granted. At common law a bare possibility not coupled with an interest, such as expectancy by an heir that he would succeed to his ancestor's estate, was not even a subject of disposition or assignment. Now, however, a prospective devisee or heir may, under certain conditions, during the life of his ancestor, make an equitable assignment of an expectant or contingent interest. 2 R. C. L. 606. And we decided recently that a son might by contract in writing, for a consideration paid by his father, discharge the estate of all right to future participation in the estate. *Jackson* v. *Jackson,* 84 W. Va. 100; *Roberts* v. *Coleman,* 37 W. Va. 143, 155. Such a deed or contract would operate by way of estoppel against the maker from thereafter claiming any interest in the ancestor's estate as against the other heirs or distributees of the estate. So long as one is living, whether a lunatic, idiot or otherwise mentally incapacitated, his rights do not devolve upon his widow or heirs. They must be vindicated by him or by some personal representative, as a committee, trustee or other representative appointed by law. *Baldwin* v. *Golde,* 88 Hun. 115. In *Lefew* v. *Hooper, Trustee,* 82 Va. 946, the bill of a son to annul the deed of his father to a trustee for the benefit of his wife during her life and after her decease for the benefit of his own son and her two sons by a former husband, filed after the wife's death but during the life of the father, was held to assert no valid claim, and was rightfully dismissed. In Louisiana, it was held that heirs can not attack the deed of their ancestor because it was made to defraud his creditors, if it is not shown to defraud or injure the heirs. *Terrel's Heirs* v. *Cropper,* 9 Martin, (La.), 350, 13 Am. Dec. 309.

But may the bill be sustained as one to remove the committee, of whom it is complained he will not proceed to reclaim or recover the property deeded away while the grantor was insane? The committee was appointed by the county court, and gave bond and qualified in that court. In *Dickel* v. *Smith,* 38 W. Va. 635, we decided that it was not only the

right but the duty of the Committee of an insane person to institute a suit to set aside a void decree of sale. This ruling is equally applicable to the void deed of his ward. Section 22, chapter 58 of the Code, gives the custody and control of the estate of an insane person to his committee, and it is his duty to sue for injuries done the real or personal estate of the ward. *Johnson* v. *Chapman*, 43 W. Va. 639. Section 10 of chapter 87 of the Code gives the court of his appointment sole jurisdiction to remove a committee at the instance of any person interested, whenever for any cause it appears proper that his powers should be revoked or annulled. The circuit court clearly is without jurisdiction to remove the present committee of the lunatic. The county court has ample and exclusive authority in the present case:

Moreover, if not protected by the committee during the life of his ward, the rights of the plaintiffs in the estate of their ancestor, if any, may be hereafter vindicated when they shall have matured by the death of the ancestor, by their own suit. 1 Lewis's Blackstone, p. 749, side page 292; 9 R. C. L. 91.

For the foregoing reasons we are of opinion that the bill presents no case entitling the plaintiffs to any present relief, and that the demurrer thereto should have been sustained. We will so certify our conclusion to the circuit court.

*Reversed; demurrer sustained.*