# CHARLESTON.

Frank McCary *v.* Monongahela Valley Traction Company

Submitted September 23, 1924. Decided October 7, 1924.

1. Contracts—*Valuable Consideration, However Small or Nominal, Will Sustain Contract.*

   When given or stipulated for in good faith, a valuable consideration, however small or nominal, is sufficient to sustain a contract. (p. 308).

2. Release—*Written Release of Claim for Personal Injuries Cannot be Repudiated, Without Placing or Offering to Place Other Party in Status Quo.*

   In an action for damages for personal injuries, plaintiff cannot repudiate a written release of all claims arising out

of his injuries, on the ground of fraud or mental incompetency to contract, without returning everything of value received by him in consideration for the release, or offering to do so. (p. 308).

3. EVIDENCE—*Nonexpert May Give Opinion as to Party's Mental Capacity to Contract, Where Preceded by Witness' Observations.*

A non-expert witness may give in evidence his opinion in regard to the mental capacity of a party to a contract at the time the contract in question was made, where he has had opportunity to observe such party and precedes his opinion by detailing to the jury the facts upon which his opinion is based.    (p. 312).

4. TRIAL—*Plaintiff Having Burden on Any Issue, May Open and Close to Jury.*

Where the burden of proof is on the plaintiff on any of the issues, he has the right to open and close the case before the jury. (p. 312).

Error to Circuit Court, Marion County.

Suit by Frank McCary against the Monongahela Valley Traction Company.   Judgment for plaintiff, and defendant brings error.

*Reversed, verdict set aside; new trial awarded.*

*Tusca Morris* and *A. J. Colborn*, for plaintiff in error.

*Harry Shaw* and *Frank C. Haymond*, for defendant in error.

MILLER, JUDGE:

This suit was brought to recover damages for personal injuries received by plaintiff while a passenger on a street car owned and operated by defendant.   Defendant interposed a plea of accord and satisfaction, setting up a release under seal, executed by plaintiff, which purported to be in discharge of all claims or demands arising out of his injuries sustained by reason of the accident of which he complained.   To this plea plaintiff replied generally, and filed three special replications.   The first special replication alleged that the release mentioned in defendant's special plea was obtained by fraud and misrepresentation on the part of the defendant, and that

the supposed sum mentioned therein was in fact a donation or gift; the second, that plaintiff was, at the time of the execution of the release, incapable of understanding the nature and comprehending the meaning and effect of said purported paper writing, and that he was still suffering from the effects of the injuries inflicted upon him by defendant, and was wholly incapable of transacting business or of entering into a contract of release; the third, that the release was obtained from him without adequate consideration. Issue was joined on defendant's special plea and the replications thereto. There was no plea to the general issue.

Defendant demurred to each of the special replications and moved to strike them from the record. The first question presented is, did the trial court err in overruling defendant's demurrer to the three special replications, and in refusing to strike them out?

Clearly, replication number three was no defense to the special plea. If the parties were competent to contract, mere inadequacy of consideration would not render their contract void. A valuable consideration, however small and nominal, if given or stipulated for in good faith, in the absence of fraud, is sufficient to sustain a contract. *Rhoades v. Railway Company*, 49 W. Va. 494; *Lowther Oil Company v. Guffey*, 52 W. Va. 91; *Lovett v. Oil Company*, 68 W. Va. 670. No fraud is charged in this plea.

The second special replication charges mental incapacity on the part of plaintiff to contract at the time the alleged release was executed. There was no tender or offer to return the money received by plaintiff as a consideration for the release pleaded, nor is it alleged that the amount received by plaintiff was ever tendered to defendant at any time. The weight of authority seems to be, that if one seeks to rescind a settlement on the ground of fraud, mental incompetency or mistake, he must, after discovering the fraud or mistake, place the other party in *statu quo*, or offer to do so. *Worthington v. Collins*, 39 W. Va. 406; *Myers v. Cook*, 87 W. Va. 265; *Niederhousen v. Railway Company*, 131 Mich. 550; *Brainard v. Van Dyke*, 71 Vt. 359; *Cress v. Ivens*, 163 Iowa 659; *South Bend and Mishawaka Gas Co. v. Jensen*, 182 Ind.

557; *Brown* v. *Ins. Company*, 117 Mass. 479; 2 Bates Plead.
& Pract. 908, and cases cited; 12 C. J. 355; 23 R. C. L.
411-413; 3 Williston on Contracts, sec. 1529. The cases cited,
for the most part, are where a compromise was sought to be
set aside for fraud; and they hold also that such contracts
are voidable only, not absolutely void. In *Myers* v. *Cook,
supra,* the action was in assumpsit on two negotiable notes,
and the defense set up by special pleas was that defendant
had been injured by plaintiff's misrepresentation and the loss
of a substantial part of the consideration, a logging contract
breached by plaintiff. It was held that to effect a rescission
cognizable and enforceable in a court of law, the rescinding
party must return everything of value he has received by
virtue of the contract, See, also, *Morris* v. *Hall*, 89 W. Va.
460.

Fraud is not alleged in this replication. So far as the
replication itself shows, defendant's agents were ignorant of
plaintiff's mental condition. It is not charged that they
knew he was at the time incompetent to contract. Plaintiff
seeks to avoid the contract of release simply because of his
own disability, not because of misconduct on the part of the
defendant. In view of the authorities cited above, we do not
think he can do so and at the same time retain the benefits
received by him as a consideration for the release.

There are cases holding that it is unnecessary to return or
tender the consideration in repudiating a release of damages
for personal injury, where the release is alleged to have been
secured by fraud. Some text writers attempt to reconcile the
conflict in the decisions by dividing them into two classes—
those in which the fraud is in the treaty, and those in which
the fraud is in the factum. In the second class are placed the
cases where the plaintiff denies making the release, where he
was misled as to its contents, or where his signature was
secured by fraud; and it is said that in such case there is no
contract, and the party is not required to return the consid-
eration as a prerequisite to maintaining a defense to the in-
strument, where he sues on his original cause of action. 23
R. C. L. 411-413; 25 Ann. Cas. note p. 1084.

By his special replication number one, plaintiff alleges

that the release in question "was obtained from said plaintiff by fraud and misrepresentation on the part of said defendant, through its servants and agents, they then and there at the time of the date of said paper writing representing to the plaintiff that said supposed sum of $325.00 in said paper writing mentioned was a donation or gift." We do not find any appreciable evidence to support the proposition that the money paid plaintiff was a donation or gift, and none that plaintiff understood it to be such. The evidence shows that immediately after the accident in which plaintiff was injured, he was removed to the state miners' hospital at Fairmont, a few miles from the scene of the accident. The hospital records show that plaintiff was under treatment there for seventeen or eighteen days. Three days after his dismissal from the hospital the release was executed at the offices of the defendant company. The only evidence to sustain the theory that the sum named in the release was a donation or gift, is the testimony of plaintiff's wife. She was not in the room with plaintiff and defendant's claim agent at the time the settlement was made and the release executed and signed; but says when Mr. Chapman, the claim agent, brought her husband from the room, she saw that he had a small piece of yellow paper. She asked him what it was, but received no reply. She then said to Chapman: "You are not trying to pay Mr. Frank, are you? You know he ain't in his right mind." She says Chapman answered: "You are not in no condition to work;" and said he was giving that to Frank, and said, "in three weeks from now, you bring him back." According to her testimony Chapman then took them down to the bank on the first floor of the same building, and requested the bank's teller to cash the check he had given plaintiff; that the teller put the money on the counter and that she took it up. She says the reason she took the money was because Chapman told her she was not able to work and told her in three weeks time to bring Frank back. Mrs. McCary did not see plaintiff sign the release or endorse the check, and knew nothing of the negotiations between plaintiff and Chapman. In his testimony plaintiff insists that he knew nothing from the time he was injured until some time after the alleged

execution of the release, when he found himself at home. He says he does not remember visiting the defendant's offices, nor of ever seeing Chapman.

Chapman testified that plaintiff seemed to be perfectly normal at the time the release was executed; that they spent an hour or more adjusting plaintiff's claim, and finally arrived at the sum of $68.25 for loss of clothing at the time of the injury, plaintiff placing a value on each particular article worn at the time. When it came to loss of time, Chapman said he called the resident physician at the hospital where plaintiff had been treated, to ascertain when, in the physician's opinion, plaintiff would be able to resume work again, and that plaintiff also talked over the telephone. The physician corroborates Chapman as to his conversation with plaintiff over the telephone in regard to his loss of time. Chapman says, that after their conversation with the physician, plaintiff agreed to accept pay for three weeks time in advance of the date of settlement, or six weeks in all. The loss of clothing and pay for loss of time amounted to $242.85, or $82.15 less than the sum finally agreed upon in the settlement. The defendant paid all of plaintiff's hospital bill. The release was signed and sealed by plaintiff in the presence of three attesting witnesses, Chapman and two other employees of the defendant company. One of these witnesses testified that he was present and did not see anything about plaintiff's conduct to indicate that he wasn't mentally right; and that the contract was read to him, and he said he understood it. Chapman said that the contract was not only read to plaintiff, but that he read it himself, and said: ''I know thoroughly what it is. It is settling this accident; settling my claim against the company.''

Plaintiff's counsel argue that the money was not paid to plaintiff, but to his wife. It may be true that she took the money when the check was cashed; but the settlement was made in defendant's office, and was consummated when the release was signed and the check accepted by plaintiff. The check was accepted as a consideration for the release, not the cash at the bank.

Since we are of opinion that plaintiff's special replications

number two and three should have been rejected, and that his special replication number one is not supported by the evidence, defendant's instruction number one should have been given to the jury, a peremptory instruction to find for the defendant.

Defendant complains that the witness Wright was permitted to give in evidence his opinion that plaintiff was not mentally capable of transacting business on the day the release was executed. The reason given is that the jury were as competent as the witness to form an opinion from the facts on which the witness based his opinion. In the present case the witness did detail practically all the facts on which he based his opinion. He had been with plaintiff the most of the day. He told of their conversations, the questions asked plaintiff, and the answers returned. When asked if he believed plaintiff capable of transacting important business at the time, he answered: ''I really don't know, but in questions I asked him, he didn't seem to be in shape to answer; he didn't seem to give me correct answers at all. I would ask him about several different things and he would get to talking about something else. Well, from my belief, I don't think he was capable.'' The witness detailed in evidence a number of questions asked and the answers given. As a general rule witnesses can testify to facts only, and not to opinions or conclusions based on facts. But we have held that a non-expert witness may give his opinion in regard to the mental capacity or incapacity of a testator, obtained by personal contact with him. *Freeman* v. *Freeman*, 71 W. Va. 303. And this is so especially where the witnesses' opinion is preceded by a statement of his opportunity for observation, and of the facts observed. *Davis* v. *Alderson*, 125 Va. 681; Jones on Evidence, (3rd ed.) sec. 364. Here the jury could not, by a mere detailed statement of the facts, be put in the position of the witness to observe plaintiff's mental condition. Under the circumstances, we think the evidence was properly admitted. Since the jury had the facts before them, they could give witnesses' opinion such weight as they might determine it to be entitled to.

Defendant's counsel complain that the trial court refused

to permit them to open and close the argument to the jury. It is insisted that on the issue joined, defendant had the burden of proof, to establish its plea of accord and satisfaction, there being no plea to the general issue. We think the plaintiff had the burden of establishing his case. Though negligence was admitted, plaintiff must prove damages; and besides, by his special replications the burden was on him to prove fraud or mistake, in order to avoid his contract. "If the burden of proof is on the plaintiff on any of the issues, he has the right to open and conclude the case before the jury." *Huffman* v. *Alderson's Admr.* 9 W. Va. 616.

The judgment will be reversed, the verdict set aside, and a new trial awarded defendant.

*Reversed; verdict set aside; new trial awarded.*