482 S.E.2d 176

**GO-MART, INC., Plaintiff
Below, Appellee,**

v.

**Penny K. OLSON, Defendant
Below, Appellee.**

**Penny K. OLSON, Plaintiff
Below, Appellee,**

v.

**GO-MART, INC., Defendant
Below, Appellee,**

**Robertson-Hinkle, Inc., aka Robertson and
Hinkle, Inc. and Robertson & Hinkle,
Inc., Defendant Below, Appellant.**

No. 23306.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 11, 1996.

Decided Dec. 13, 1996.

Paul S. Detch, Lewisburg, for Appellant Robertson–Hinkle, Inc.

John Philip Melick, Jackson & Kelly, Charleston, for Appellee Go–Mart, Inc.

Robert A. Goldberg, King, Allen & Guthrie, Charleston, for Appellee Penny Olson.

PER CURIAM:

In this action, the appellant, Robertson–Hinkle, Inc., appeals from the final order of the Circuit Court of Greenbrier County, West Virginia, entered on December 18, 1995. Pursuant to that order, the circuit court entered judgment upon a jury verdict returned in favor of the appellee, Penny K. Olson. Go–Mart, Inc. is also an appellee herein. Robertson–Hinkle raises an issue before this Court concerning whether Ms. Olson's lack of capacity to enter into agreements for the sale of certain real property to Robertson–Hinkle and Go–Mart, as found by the jury, necessarily rendered those agreements held for naught.

This Court [1] has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, this Court is of the opinion that the circuit court, subsequent to the jury verdict, acted correctly in concluding that the agreements were voidable, declaring that the agreements be held for naught and restoring the parties to the status quo. Accordingly,

the final order of December 18, 1995, is affirmed.

I

In 1979, Ms. Olson and her husband acquired real property on U.S. Route 219 near Lewisburg, Greenbrier County, West Virginia. The property was separate from the Olsons' residence which was also in the Lewisburg area. Upon the death of her husband in 1985, Ms. Olson became the sole owner of the property. During the time of the transactions in question, Ms. Olson, 83 years of age, had never been adjudged incompetent and had never had a guardian or committee appointed upon her behalf. However, as the parties agree, she entered into various inconsistent agreements with regard to the sale of the Route 219 property.

On September 1, 1994, Ms. Olson signed a contract with Seneca Realty Company of Lewisburg in which she granted to Seneca an "exclusive authorization to sell" the Route 219 property for $180,000. However, on January 17, 1995, Ms. Olson also signed a contract with Path Finders Realtors of Lewisburg in which she granted to Path Finders an "exclusive real estate property listing" for the sale of the property. The contract with Path Finders was signed in conjunction with a purchase agreement, also signed by Ms. Olson on January 17, 1995, in which she agreed to sell the property to Go–Mart for $190,000.

In spite of the latter transaction concerning Path Finders and Go–Mart, Ms. Olson, on January 20, 1995, signed a purchase agreement, provided by Seneca, in which she agreed to sell the Route 219 property to Robertson–Hinkle for $180,000. Soon after, by deed dated January 26, 1995, and recorded in Greenbrier County, Ms. Olson conveyed the property to Robertson–Hinkle. The closing date of the sale was February 1, 1995.

Thereafter, an action was instituted by Go–Mart against Ms. Olson alleging that Ms.

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

Olson had breached the agreement to sell the Route 219 property to Go–Mart. Ms. Olson, in turn, filed an action against Go–Mart and Robertson–Hinkle alleging a lack of capacity concerning the above transactions. In particular, Ms. Olsen sought to have the January 26, 1995, deed to Robertson–Hinkle set aside and to have title to the property restored to her.

By order entered on July 3, 1995, the circuit court consolidated the complaints of Go–Mart and Ms. Olson for trial and issued a preliminary injunction against both Robertson–Hinkle and Go–Mart enjoining them from altering the Route 219 property pending the litigation. As part of the preliminary injunction order, the circuit court directed that the purchase money paid by Robertson–Hinkle for the property be held in escrow, "with interest paid into the fund."

Trial began in October 1995, and a special verdict was returned by the jury finding that Ms. Olson lacked the capacity to understand the two purchase agreements and the deed. On December 18, 1995, the final order was entered in which the Go–Mart and Robertson–Hinkle purchase agreements, and deed to Robertson–Hinkle, were adjudged voidable and held for naught. Title to the property was restored to Ms. Olson, and she was directed to return the $180,000 purchase price, with "interest actually earned thereon," to Robertson–Hinkle. This appeal by Robertson–Hinkle followed.

## II

It should be noted that the parties herein do not contest the verdict of the jury finding that Ms. Olson lacked the capacity to understand the two purchase agreements and the deed. Moreover, the parties are in agreement that those documents were voidable, rather than void *ab initio*. Instead, the appellant, Robertson–Hinkle, contends that the jury verdict did not necessarily render the documents invalid. Specifically, Robertson–Hinkle asserts that, Ms. Olson's lack of capacity notwithstanding, either the Go–Mart purchase agreement or the Robertson–Hinkle purchase agreement and deed were enforceable, if fair and reasonable under the circumstances to the average person. Thus,

Robertson–Hinkle asserts that the circuit court committed error in refusing to instruct the jury as follows:

The jury is further instructed that before the court can declare a contract to be null and void it must be of such nature that a reasonable prudent person under Penny Olson's circumstances would not have entered into the contract. You, the jury, must determine whether the contract of Robertson–Hinkle and the contract of Go–Mart were fair and reasonable under the circumstances. If you should determine that each of the contracts was fair and reasonable then the rules of law and notice will determine the issue as to which contract is superior to the other.

In that regard, Robertson–Hinkle states that its claim to the property is superior to that of Go–Mart because (1) Robertson–Hinkle obtained a deed for the property from Ms. Olson, which it recorded, and (2) Robertson–Hinkle acquired the property as a bona fide purchaser, without notice of Ms. Olson's lack of capacity.

Go-Mart also claims to be a bona fide purchaser. However, Go–Mart and Ms. Olson contend that Robertson–Hinkle's theory of "reasonableness" is not a correct statement of the law and that the circuit court correctly refused to give the above instruction to the jury. In particular, asserting that the circuit court recognized that, under the circumstances of this action, the parties could be placed in the status quo following the verdict, the circuit court properly so ordered in the final order of December 18, 1995.

As stated above, the parties do not contest the verdict of the jury finding that Ms. Olson lacked the capacity to understand the two purchase agreements and the deed. That issue was clearly for the jury to decide, and Ms. Olson's age, 83 years at the time of the transactions in question, was a factor to be considered. *See Hess v. Arbogast*, 180 W.Va. 319, 323, 376 S.E.2d 333, 337 (1988), indicating that, in determining a grantor's mental ability to execute a deed, age and general physical and mental health are "significant" factors. Relevant, however, to Robertson–Hinkle's contention that the reasonableness

of a transaction to convey property should be considered, following a jury verdict of lack of capacity, is the case of *Morris v. Hall,* 89 W.Va. 460, 109 S.E. 493 (1921).

In *Morris,* a decedent's administrator instituted an action in Monongalia County to set aside various conveyances made by the decedent to others. Although the decedent had never been adjudged unsound of mind, the record indicated that the decedent had been without sufficient memory or understanding to appreciate the nature of the transactions, and the conveyances were set aside by the circuit court for that reason. This Court, however, reversed in *Morris* and remanded the action for further proceedings, i.e., principally for returning the parties who had transacted with the decedent to the status quo. In so holding, this Court observed in syllabus point 1 of *Morris* that "[t]he deed of an insane person, made before an inquisition of lunacy has been had, and in the absence of fraud or imposition, and without knowledge or notice to the grantee therein of such mental disability, is not void, but voidable only." Moreover, as the *Morris* opinion further explained: "And being voidable only, [the deeds of those under disability] can not be avoided without restitution of benefits secured thereby, or placing the parties affected in status quo as far as possible, this upon the principles pertaining to courts of equity [.]" 89 W.Va. at 465, 109 S.E. at 495. *See also McCary v. Monongahela Valley Traction Co.,* 97 W.Va. 306, 309, 125 S.E. 92, 93 (1924); *Harman v. Harman,* 90 W.Va. 303, 305, 110 S.E. 718, 719 (1922).

The analysis thus expressed in *Morris* is consistent with the following language found in Annot., *Validity and Enforceability of and Relief From Contract Made in Good Faith With Incompetent Before Adjudication of Incompetency,* 95 A.L.R. 1442 (1935):

> As is stated in the original annotation, the great weight of authority is to the effect that, where a contract with an incompetent has been entered into in good faith, without fraud or imposition, for a fair consideration, without notice of infirmity and before an adjudication of incompetency, and has been executed in whole or in part, it will not be set aside *unless the*

> *parties can be restored to their original position.*

(emphasis added)

The term "insane" may constitute an exaggeration of Ms. Olson's condition, in view of the jury's determination that she simply lacked the capacity to enter into the purchase agreements and deed in question. This Court, however, is of the opinion that the *Morris* case is dispositive of the theory advanced by Robertson–Hinkle. Following the verdict of the jury, the circuit court, in December 1995, conducted a hearing concerning the voidable nature of the Go–Mart and Robertson–Hinkle documents. Determining that, under the circumstances of this action, the parties could be returned to the status quo, the circuit court held the transactions for naught, ordered the title to the property restored to Ms. Olson and directed that Ms. Olson return the $180,000 purchase price, with interest, to Robertson–Hinkle. A review of the record confirms the validity of the circuit court's actions in that regard, and this Court is of the view that the circuit court acted equitably within the meaning of the *Morris* case.

In particular, Robertson–Hinkle's assertion that, Ms. Olson's lack of capacity notwithstanding, the transactions were enforceable, if fair and reasonable under the circumstances to the average person, is not a correct statement of the law. In fact, Robertson–Hinkle's theory undermines basic elements of contract law and, specifically, undermines Ms. Olson's role with regard to her own property. As stated in syllabus point 5 of *Virginian Export Coal Co. v. Rowland Land Co.,* 100 W.Va. 559, 131 S.E. 253 (1926): "The fundamentals of a legal contract are competent parties, legal subject matter, valuable consideration and mutual assent. There can be no contract if there is one of these essential elements upon which the minds of the parties are not in agreement." *See also McGinnis v. Enslow,* 140 W.Va. 99, 109, 82 S.E.2d 437, 442 (1954); *Martin v. Ewing,* 112 W.Va. 332, 336, 164 S.E. 859, 861 (1932). Here, the reasonableness or fairness of the transactions in question cannot supply Ms. Olson's want of capacity.

Finally, Robertson–Hinkle asserts that, if the agreements and deed are held for naught and the parties restored to the status quo, Robertson–Hinkle is entitled to a greater amount of interest upon the $180,000 purchase price than the amount of interest specified by the circuit court.

■ As stated above, as part of the preliminary injunction order, the circuit court directed that the purchase money paid by Robertson–Hinkle for the property be held in escrow, with interest paid into the fund. While in escrow, the purchase money was invested in government securities at a return of approximately 5%, and following the jury verdict, Ms. Olson was directed to return the $180,000, with "interest actually earned thereon." According to Robertson–Hinkle, inasmuch as it was obligated upon a 9% loan, in initially acquiring the $180,000 to pay Ms. Olson for the property, it is now entitled to the greater amount of interest.

Upon careful review, however, this Court is of the opinion that the assertion of Robertson–Hinkle is without merit. First, although the circuit court permitted Robertson–Hinkle to submit a claim for damages, including a claim for the purchase money and interest, to the jury, the jury returned no such verdict for Robertson–Hinkle and, in fact, awarded no damages to any of the parties. The jury merely found that Ms. Olson lacked capacity concerning the various transactions.

More important, however, the circuit court considered the interest question during the post-verdict hearing conducted in December, 1995 and concluded that Robertson–Hinkle was only entitled to the interest "actually earned" upon the purchase money. Specifically, a reading of the transcript of that hearing reveals that, although Robertson–Hinkle was paying 9% interest upon its loan obligation, Ms. Olson had paid substantial amounts in closing costs at the time she deeded the property to Robertson–Hinkle. The circuit court, nevertheless, directed Ms. Olson to return the full $180,000 purchase price. Clearly, the final order of the circuit court reflects a balancing of the equities in terms of returning the parties to the status quo. As the above language of *Morris* suggests, in an action such as the one before us,

the parties are to be placed in the status quo "as far as possible."

Upon all of the above, therefore, the circuit court acted correctly in concluding that Ms. Olson's transactions with Go–Mart and Robertson–Hinkle were voidable, declaring that the agreements and deed be held for naught and restoring the parties to the status quo. All other issues raised by the parties are without merit. Accordingly, the final order of the Circuit Court of Greenbrier County, entered on December 18, 1995, is affirmed.

Affirmed.